COMMUNICATIONS MAINTENANCE,
INC.,
Plaintiff-Counterdefendant-Appellant,

v.

MOTOROLA, INC. and Motorola Communications & Electronics, Inc.,
Defendants-Counterplaintiffs-Appellees.

No. 83-3049.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1984.

Decided May 6, 1985.

Rehearing Denied July 8, 1985.

Nader Baydoun, Hopper & Opperman, Indianapolis, Ind., for plaintiff-counterde-fendant-appellant.

Garrett B. Johnson, Kirkland & Ellis, Chicago, Ill., for defendants-counterplain-tiffs-appellees.

Before WOOD, Circuit Judge, SWY-GERT, Senior Circuit Judge, and GRANT, Senior District Judge.*

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

This case involves a dispute between Motorola, a seller of radio communications services, and Communications Maintenance, Inc. ("CMI"), one of Motorola's authorized service stations, over Motorola's decision to terminate the authorized service station agreement and numerous service subcontracts.

## I.

Motorola is a manufacturer and seller of radio communications equipment and related services consisting of installation and maintenance contracts. In selling related services Motorola contracts directly with the radio users and then either performs the service itself, or subcontracts the service work to independent service companies. Motorola designates many of these subcontractors as authorized Motorola Service Stations ("MSS's") pursuant to a Motorola Service Station Agreement ("MSSA").

The standard MSSA provides that Motorola will use its best efforts to arrange for the MSS to install and maintain Motorola radios sold to customers in the MSS's service area. In return, the MSS agrees, among other things, to accept and enter all maintenance subcontracts with Motorola provided the subcontracts conform to Motorola's standard installation or maintenance subcontracts and that the subcontracts are at a rate equal to or in excess of the MSS's current rates for installation and/or maintenance. The MSS also agrees to perform the work in accordance with Motorola specifications. Finally, the MSSA provides that either party can terminate the MSSA without cause upon thirty-days written notice. The subcontracts provide that if CMI is terminated as an MSS then Motorola can terminate the subcontracts on ten-days written notice.

CMI engages in the business of installing and servicing two-way radio communication equipment and was first designated an MSS in 1955. Motorola and CMI executed their last MSSA on February 24, 1971. In late March, 1981, Motorola learned that CMI was soliciting Motorola customers to cancel their service contracts with Motorola and enter into service contracts directly with CMI. These solicitations also included a representation that CMI had become associated with General Electric, a Motorola competitor, as a service center and sales organization.

On April 10, 1981, Motorola notified CMI by letter of its intention to terminate the MSSA thirty days thereafter. At the same time it gave thirty-days notice of its intention to terminate all service subcontracts between the parties.

On May 8, 1981 CMI brought suit in Indiana state court charging that the termination of the MSSA was without good cause and that therefore it was in violation of the Indiana Franchise Act and that the termination of the service subcontracts constituted anticipatory breach. The case was removed to federal court when CMI amended its complaint adding charges that the terminations violated federal antitrust laws and that they were breaches of implied agreements between the parties. Motorola counterclaimed, charging that CMI's solicitation of Motorola customers to cancel their service contracts with Motorola and enter direct contracts with CMI constituted tortious interference with business opportunities using confidential and proprietary information, and violation of fiduciary duty. Motorola also sought payment for radio parts delivered to CMI.

The district court, in an order issued October 28, 1981, denied CMI's motion for a preliminary injunction and then, in an order issued March 24, 1982, granted Motorola's motion for summary judgment on CMI's initial claims of violation of the Indiana Franchise Act and anticipatory breach of contract.

On August 19, 1982, CMI filed for relief under Chapter 11 of the Bankruptcy Code, thus obtaining an automatic stay of Motorola's counterclaims. On May 10, 1983, the bankruptcy court amended the automatic stay to allow the trial, which had been set for May 11, 1983, to proceed. Also on May

10 CMI filed a jury demand and a request for continuance of trial to conduct further discovery. On May 11 the district court denied plaintiff's demand for a jury trial and request for a continuance, and a three-day bench trial commenced. After trial, the judge rejected CMI's federal antitrust and breach of implied contracts claims, as well as Motorola's counterclaim for tortious interference with contractual relations, wrongful conversion of business opportunities using proprietary information, and violation of fiduciary duty. The judge granted Motorola relief on its counterclaims for payment on account and on an October 24, 1980 promissory note for parts delivered. After offsetting for credits owed by Motorola for service subcontract payments and other accounts receivable the judge entered judgment for Motorola in the amount of $58,389.69.

Plaintiff-appellant, CMI, appeals the district court's (1) grant of partial summary judgment in favor of defendant-appellee, Motorola, on count I alleging violation of the Indiana Franchise Law, (2) refusal to grant plaintiff's jury trial demand and request for continuance of trial, (3) finding that the MSSA's thirty-day termination clause was not unconscionable, and (4) rejection of CMI's implied contract claims.

## II.

Count I of CMI's complaint charges that Motorola violated the Indiana Franchise Act when it terminated the MSSA without good cause. The district court granted Motorola's motion for summary judgment, dismissing the claim on grounds that the MSSA did not constitute a franchise agreement under Indiana law because no "franchise fee" was paid.

■ Two of CMI's challenges to this dismissal are cognizable on this appeal. First, CMI claims that the district court erred in

relying on its finding at the preliminary injunction stage that no franchise relationship existed under Indiana law. Second, CMI claims that even if the reliance was proper, the finding that there was no issue of material fact whether a franchise relationship existed was itself error.[1]

■ The district court, in its summary judgment order dismissing plaintiff's Franchise Act claim, appears to have relied exclusively on the findings of fact and conclusions of law given in the court's order denying CMI's motion for preliminary injunction. This can be a risky approach. A court must be cautious in adopting findings and conclusions from the preliminary injunction stage in ruling on a motion for summary judgment for two reasons. First, a court's findings of fact and conclusions of law at the preliminary injunction stage are often based on incomplete evidence and a relatively hurried consideration of the issues. 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2950 (1973). Second, the questions focused on differ in deciding a motion for preliminary injunction and in deciding a motion for summary judgment. In the former a court considers whether there is *a reasonable likelihood* that the *moving party* will prevail on the merits; in the latter a court considers whether there is any *issue of material fact* remaining after construing the facts in a *light most favorable* to the *non-moving* party. 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2950 (1973); *see also Technical Publishing Co. v. Lebhar-Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984) (there is no inconsistency in denying plaintiff's motion for preliminary injunction and denying defendant's motion for summary judgment).

---

1. CMI also contends that the district court erred at the preliminary injunction stage in finding the Franchise Act inapplicable because such a decision went beyond what was necessary to decide whether a preliminary injunction should issue. This issue is not, however, properly before us on this appeal of the summary judg-

ment. The issue whether it was proper for the court to discuss the applicability of the Franchise Act in issuing its preliminary injunction is properly brought on an interlocutory appeal of the denial of a preliminary injunction under section 1292(a)(1) of the Judicial Code. 28 U.S.C. § 1292(a)(1).

In this case, however, there appears to be no error in the district court's adoption of its findings and conclusions from the preliminary injunction stage as the record as a whole supports the finding that there is no material issue of fact whether CMI paid Motorola a franchise fee. *See United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir.1980) (an appellate court can affirm a decision on a Rule 56 motion on grounds other than those employed by the district court); 10 C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2716 (1983).

The Indiana Franchise Act conditions the existence of a franchise in part on the payment of a "franchise fee" by the franchisee. The Indiana Franchise Act defines a "franchise fee" as "any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business to sell, resell, or distribute goods, services or franchises under a contract agreement, including, but not limited to, any such payment for goods or services." Ind.Code § 23–2–2.5–1(i) (1984).

CMI claims that it paid a "franchise fee" (1) by agreeing to enter into all subcontracts for installation and maintenance of Motorola customer radios in the CMI service area, (2) by performing the installation and service work in accordance with Motorola specifications, and (3) by performing the subcontract work at a price lower than the Motorola contract price.

 Although we have found no Indiana case law, legislative history, or regulation construing "franchise fee" under the Indiana Act,[2] we are confident that whatever meaning Indiana courts ultimately give the term, none of CMI's three claimed payments would qualify as a "franchise fee." While we hesitate, without guidance from Indiana courts, to define the exact parameters of the definition of "franchise fee," we do not think that the passing of consideration in the form of a promise to perform a future act lies within the parameters of any reasonable definition because such consideration does not accord with the normal meanings of "fee" and "pay," two terms used to define "franchise fee." Thus, CMI's first two claimed "franchise fee" payments—agreeing to enter into all subcontracts for installation and maintenance of Motorola customer radios in the CMI service area and performing the subcontract work according to Motorola specifications—do not qualify as "franchise fees."

Nor does CMI's third claimed "franchise fee" payment—performing the subcontract work at a price lower than the price Motorola gets on its service contracts—qualify as a "franchise fee." Although the Act does provide that a "franchise fee" may be paid "indirectly," and thus seems to permit consideration in the form of a discount on services to qualify as a "franchise fee,"[3] we do not believe that this particular contract/subcontract pricing arrangement qualifies as a "franchise fee" because the MSSA makes clear that the price CMI charged Motorola for its subcontracting service was not discounted. The MSSA expressly provides that the subcontract work will be done "at a rate or rates *equal to* or *in excess of* [CMI's] then current rates for installation and/or maintenance."

---

**2.** The only reported case interpreting "franchise fee" under the Indiana Act is an Indiana federal court decision which held that paying $4,000 to promote the franchised product did not constitute payment of a franchise fee under the Indiana Act since receipt of the franchise was not conditioned on this payment. *See Lafayette Beverage Distributors v. Anheusar-Busch*, 545 F.Supp. 1137, 1150 (N.D.Ind.1982).

**3.** Although we have found no Indiana cases or regulations construing "indirectly" under the Act, we have found an Illinois state regulation interpreting the term "indirect franchise fee" under an Illinois Franchise Act similar to Indiana's. This regulation states that "an 'indirect franchise fee' might include a price or rent markup on equipment, real estate, raw materials or services which the franchisee is required by agreement to buy or lease from the franchisor." Ill.Rule 105 promulgated under 121½ Ill.Rev.Stat. § 701 *et seq.* (quoted in *Kocjancich v. Bridges*, 93 Ill.App.3d 550, 49 Ill.Dec. 4, 8, 417 N.E.2d 694, 698 (1981)). Conversely it would seem that a price discount given by a franchisee on goods or services it is required to render to the franchisor would constitute an indirect franchise fee.

(Emphasis added.) The affidavits submitted by CMI in response to Motorola's motion for summary judgment do not controvert this contractual provision. They only state that Motorola routinely set its contract price by adding a percentage to CMI's subcontract price. Thus there is no issue of material fact whether this contract/subcontract price differential contains an indirect franchise fee in the form of a price concession on the subcontract work; it clearly does not. Rather this contract/subcontract price differential represents the costs incurred by Motorola in negotiating and enforcing its contracts with its radio customers and its subcontract with CMI, and the value of Motorola's goodwill.

### III.

■ "[A]n application for a continuance is addressed to the sound discretion of the trial court, and ... its denial furnishes no basis for a reversal unless such discretion has been abused." *United States v. United Pacific Insurance Co.*, 427 F.2d 366, 373 (7th Cir.1970). In denying CMI's request for continuance of trial the district court did not abuse its discretion.

CMI complains that because the trial commenced the day following the bankruptcy court's lifting of the stay it did not have an opportunity to conduct discovery or prepare for trial on the counterclaims filed by Motorola for tortious interference with contractual relations, wrongful conversion, violation of fiduciary duty, and for payment for goods delivered.

CMI is unable to show any prejudice from this denial of the request for continuance. CMI prevailed on the tortious interference, wrongful conversion, and violation of fiduciary duty claims. As to the payment for goods delivered claims CMI never explained to the trial court, or to this court, what additional discovery or fact preparation the denial of the request for continuance precluded it from undertaking as required by Local Court Rule 20 of the Southern District of Indiana. *See Fed. Local Ct. Rules*, Ind.—Page 61, Rule 20 (Callaghan

& Co. 1983) ("A motion to postpone a civil trial on account of the absence of evidence can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, [and] that due diligence has been used to obtain it."). Furthermore, the counterclaims were straightforward, asking for payment for goods delivered on account and on a promissory note. Indeed, in its bankruptcy petition nine months prior to trial CMI's own schedules acknowledged these debts to Motorola in an amount actually greater than the amounts sought by Motorola.

Also justifying the district court's refusal to grant continuance was the court's overall impression that CMI had been "foot-dragging ever since it started this lawsuit" about two years before trial. This impression is supported by the many continuances granted CMI prior to its final request. On December 21, 1981, and again on January 7, 1982, the district court granted CMI's motions for extensions for time in which to respond to Motorola's motion for summary judgment. On December 1, 1982, the district court granted CMI's motion for continuance of the December 8, 1982 trial date that had been ordered on May 5, 1982, and to which the parties had agreed in the court's August 13, 1982, Pretrial Entry. On February 8, 1983, the court granted CMI's February 2, 1983 motion for continuance of the parties' pretrial conference. In view of the lack of prejudice and the "foot-dragging" of plaintiff the district court did not abuse its discretion in refusing to grant plaintiff's request for a continuance.

### IV.

CMI appeals the district court's denial of its demand for a jury trial made on May 10, 1983, the day before trial. We uphold the district court's refusal to grant the jury trial demand as to all claims and counterclaims.

■ Rule 38(b) of the Federal Rules of Civil Procedure provides that a demand for a jury trial on any issue should be made "not later than 10 days after the service of the last pleading directed to such issue."

Failure to file a timely demand results in waiver of the right. On the other hand, timely filing of the demand requires a court to grant a jury trial.

■ In determining whether the May 10 jury demand was timely we must determine when the "last pleading" directed to the various issues in this case was served. The determination in this case is not self-evident for both parties amended their original pleadings on numerous occasions: the plaintiff amended its original complaint twice, the defendant amended its counterclaim once and its answer to plaintiff's complaint once. It is well-settled law that "under Rule 38 amendments or supplemental pleadings do not extend the time for making demand for jury trial except as to new issues raised by the new pleadings." *Connecticut General Life Ins. Co. v. Breslin*, 332 F.2d 928, 931 (5th Cir.1964); *Britt v. Knight Publishing Co.*, 42 F.R.D. 593, 594 (D.C.S.C.1967). Thus we must decide at what point during the pretrial pleading stage of this litigation the pleadings finally framed the various issues to be put before the trier-of-fact; that is, when did the pleadings cease raising new factual issues, and begin simply alleging new legal theories or particularized facts. We consider this question with respect to each of the counts contained in the complaint and countercomplaint.

The original complaint filed on May 8, 1981 contained count I alleging Indiana franchise law violation and count II alleging anticipatory breach of contract. These counts were decided on a motion for summary judgment and thus there was never any issue of material fact for a trier-of-fact to consider.

■ On January 6, 1982 plaintiff filed an amended complaint adding counts III and IV charging Motorola with violation of federal antitrust laws and count V charging Motorola with breach of implied-in-fact and quasi contracts. Defendant answered these allegations in its answer to the amended complaint served February 17, 1982. This pleading constituted the last pleading directed to the issues raised by counts III, IV, and V since no subsequent amended pleading by either party altered the essential factual disputes on which the antitrust or implied contract claims were based. The May 10, 1983 jury demand, coming as it did more than ten days after February 17, 1982, was therefore untimely as to counts III, IV, and V.

Count I of Motorola's counterclaim alleges that CMI's solicitation of Motorola customers to cancel service contracts with Motorola and enter contracts with CMI constituted tortious interference with contractual relations and prospective business advantage, wrongful conversion of business opportunities using confidential and proprietary information, and violation of fiduciary duty. These claims are based on the same factual issues previously raised by plaintiff's implied contract claims contained in the January 6, 1982 amended complaint. Thus, defendants' February 17, 1982 answer to the amended complaint constitutes the last pleading under Rule 38(b) and the May 10 jury demand is untimely with respect to counterclaim count I.

■ Counts II and III of Motorola's countercomplaint, contained in its amended counterclaim filed on July 20, 1982, seek to collect for goods delivered to CMI by Motorola. These counts introduced several new factual issues: (1) whether Motorola delivered the parts, (2) whether CMI accepted delivery, (3) the agreed upon price, etc. CMI answered this counterclaim for the first time on May 10, 1983 and in the answer demanded a jury trial with respect to count II and III of the counterclaim. This CMI demand, coming as it did within ten days after the last pleading directed to the factual issues raised in counterclaim counts II and III, would appear to be timely under 38(b).

A closer look at the particulars of this caes, however, convinces us that the May 10, 1983 demand was not timely. Initially we note that the May 10, 1983 answer (the "last" pleading) was itself not timely under Rule 15(a), which provides that a response to an amended pleading should be filed no

later than ten days after service of the amended pleading, in this case, within ten days of Motorola's July 20, 1982 counterclaim. But this untimeliness under Rule 15(a) is not by itself sufficient to deny plaintiff's jury demand. In *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 21 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972) we held that a jury demand made by plaintiffs in their responsive pleading filed twenty-nine days late was timely. *Dasho* does not control this case however. First, in this case, unlike *Dasho*, the party demanding the jury is primarily, if not solely, responsible for the delays that have beset this litigation. *Compare* Trial Transcript at 13 ("I think [CMI] has been foot-dragging ever since it started this lawsuit.") *with Dasho*, 461 F.2d at 22 ("In this case plaintiffs cannot be charged with the sole responsibility for the time which elapsed before the case was finally at issue."). Furthermore, in this case the jury demand was made after the case had been set for trial, indeed the day before trial was to commence. By contrast, in *Dasho* the jury demand was made 9½ months in advance of the trial. *See Dasho* Appellees' Brief at 4 & 8. Finally, here, unlike *Dasho*, the jury demand was made simultaneous with a motion for continuance of trial. Together, the timing of the jury demand one day before trial, CMI's past efforts at delay, and the simultaneous filing of the jury demand and a motion for continuance of trial suggest that CMI's jury demand in its late May 10, 1983 reply was nothing more than a pretext for further delay. We cannot permit a party to abuse judicial procedure for such a purpose and we therefore hold CMI's May 10 jury demand untimely as to counterclaim counts II and III. *Cf.* Fed.R.Civ.P. 11 ("The signature of an attorney or a party [on a motion] constitutes a certificate by him that ... to the best of his knowledge, information, and belief ... it is not interposed for any improper purpose, such as ... to cause unnecessary delay.... If a pleading, motion, or other paper ... is signed in violation of this rule, the court ... shall impose upon the person who

signed it, a represented party, or both, an appropriate sanction....").

## V.

CMI contends that the district court erred in refusing to void the thirty-day termination clause of the MSSA as unconscionable. We affirm the district court's refusal.

■ The unconscionability doctrine is a limited exception to the Indiana courts' general reluctance to alter the terms of an express contract. *See Piskorowski v. Shell Oil Co.*, 403 N.E.2d 838, 844 (Ind.Ct. App.1980) ("If the intention of the parties can be gleaned from their written expression of [a contract], however, that intention must be effectuated by the court, for that is the primary and overriding purpose of contract law—to ascertain and give effect to the intentions of the parties."). Indiana courts have defined an unconscionable contract as "one which contains unreasonable or unknown terms *and* is the product of inequality of bargaining power." *See id.* at 846–47 (citing *Weaver v. American Oil Co.*, 257 Ind. 458, 276 N.E.2d 144 (1972)) (emphasis in original). This definition makes clear that there are two conjunctive elements of an unconscionability claim: one substantive, the other procedural, where substantive unconscionability refers to the content of the contract and procedural unconscionability refers to the circumstances under which the contract was negotiated and signed.

■ The district court refused to employ the unconscionability doctrine to void the thirty-day notice of termination provision because it found that thirty days was reasonable and adequate notice. Indiana law supports this finding. In *Rockwell Engineering Co. v. Automatic Timing & Controls Co.*, 559 F.2d 460, 463 (7th Cir. 1977) this court held that a twenty-eight-day notice of termination of a distributorship agreement of indefinite duration was reasonable under Indiana's version of the Uniform Commercial Code, Ind.Code 26–1–2–309.

Since we uphold the district court's finding of no substantive unconscionability we do not reach the issue of whether there was procedural unconscionability in the negotiation and signing of the MSSA. The thirty-day termination provision is not unconscionable.

## VI.

 CMI claims that the trial court erred in refusing to alter the terms of the MSSA (1) by implying in law an agreement to terminate only for good cause, and (2) by implying in fact or in law an agreement to extend beyond thirty days the notice of termination. We uphold the district court's refusal to so alter the MSSA.

The Indiana Supreme Court has stated that "[i]f the meaning of a contract is clear, its effect will not be controlled by an erroneous construction placed on the agreement by the parties." *Walb Construction Co. v. Chipman,* 202 Ind. 434, 175 N.E. 132, 135 (1931). Furthermore, in *Kincaid v. Lazar,* 405 N.E.2d 615 (Ind.Ct.App.1980) an Indiana appellate court stated that "[i]n the absence of ambiguity, it is not within the function of the courts to look outside the instrument to arrive at the intention of the parties." *Id.* at 620 (citing *Jenkins v. King,* 224 Ind. 164, 65 N.E.2d 121 (1946)). The MSSA clearly sets forth the parties agreement with respect to termination: "Either Motorola or the MSS may terminate this agreement, with or without cause, upon thirty days written notice to the other party...." CMI makes no argument, nor is there any evidence in the record to suggest, that this clause is ambiguous. Thus the district court correctly enforced the termination clause according to its clear and express terms.

Indiana contract law also precludes a court from employing an implied-in-law legal theory to modify the plain terms of this termination clause: "The existence of a valid express contract for services ... precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot

be had on the theory of quantum merit." *Kincaid v. Lazar,* 405 N.E.2d at 619.

AFFIRMED.