**IMPLEMENT SERVICE, INC., Plaintiff,**

**v.**

**TECUMSEH PRODUCTS COMPANY, H.R.R. Zimmerman Company, Andy W. Zimmerman and Donald Struck, Defendants.**

**No. IP 88–849–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 14, 1989.

---

Jonathan R. Builta, Sansberry, Dickman, Freeman & Builta, Anderson, Ind., for plaintiff.

Robert D. Kreisman, Kreisman and Rakich, Chicago, Ill., Richard Rocap, Rocap, Witchger & Threlkeld, Indianapolis, Ind.,

John A. Farr, Jr., Busby, Austin, Cooper & Farr, Anderson, Ind., for defendants.

### ENTRY GRANTING DEFENDANTS' 12(b)(6) MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

This cause comes before the court on two motions. The defendants H.R.R. Zimmerman Company, Andy W. Zimmerman, and Donald Struck have moved to dismiss the complaint on grounds that it fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendant Tecumseh Products Company has moved for summary judgment pursuant to Rule 56.

#### A. *Basis for Subject Matter Jurisdiction*

This suit originated in an Indiana state court—the Madison County Superior Court. All of the defendants, except for Donald Struck, filed a petition for removal to federal court pursuant to 28 U.S.C. § 1441. Removal of a civil action which is based on state law is permitted under § 1441 only if there is complete diversity between the parties and no properly joined defendant is a citizen of the state in which the action is brought. Because one of the defendants, Donald Struck [1], is a citizen of the state of Indiana, removal would not be proper unless Struck had been improperly joined as a party defendant.

The remaining defendants assert in the verified petition for removal that Struck is an improperly-named defendant. In support of this assertion, they refer the court to the affidavit of Andy Zimmerman. According to Mr. Zimmerman, Donald Struck is an employee of Industrial Engine & Parts Division of H.R.R. Zimmerman. As an employee, Struck lacked the authority to enter into or cancel distributorship agreements on behalf of the company and did not participate in making these decisions. Because Struck played no role in the activities that gave rise to this lawsuit, he is an improperly joined defendant who should be dismissed from the case. The plaintiff concedes that Struck is not a proper party defendant. Plaintiff's Brief in Opposition to Motion to Dismiss, at 22.

As a result, this case is dismissed against Donald Struck. Following this dismissal, complete diversity exists between the parties and none of the defendants are citizens of Indiana, thereby conferring subject matter jurisdiction on this court. The removal of the suit to federal court under § 1441 was proper.

#### B. *Factual and Procedural Background*

The plaintiff, Implement Service, Inc. ("Implement Service"), is an Indiana corporation engaged in the wholesale and retail sale and service of lawn and garden equipment. As a substantial part of its business, Implement Service sells and services small engines and small engine parts.

Defendant Tecumseh Products Company ("Tecumseh") is a Wisconsin corporation that is one of three major American manufacturers of small engines and parts. To market and sell its products across the United States, Tecumseh enlists companies to serve as central warehouse distributors (CWD). Defendant H.R.R. Zimmerman Company ("H.R.R. Zimmerman") is one of these CWD's, serving the state of Indiana. As part of its distribution network, H.R.R. Zimmerman enters into agreements with retailers throughout the state of Indiana to provide them with Tecumseh products for sale to the public. These retailers become "Authorized Service Distributors" (ASD) for Tecumseh products. In turn, an ASD may enlist other retailers to serve as Registered Service Dealers (RSD).

Approximately nine years ago, Implement Service entered into a written agreement with H.R.R. Zimmerman to become an ASD. On May 27, 1988, Andy W. Zimmerman, the general manager of Industrial Engine & Parts, a division of H.R.R. Zimmerman, notified Implement Service that its ASD contract was being terminated effective thirty days later on June 27, 1988.

---

**1.** In its complaint, the plaintiff inadvertently named Struck "Donald Strunk."

On June 27 or June 29, 1988,[2] Implement Service filed a complaint in the Madison County Superior Court seeking to prevent its termination as an ASD. The complaint was in three counts. Count I alleged deceptive franchise practices on the part of the defendants in violation of Ind.Code Ann. § 23–2–2.7–1(7) & 23–2–2.7–1(8) (Burns 1984 & 1989 Supp.), and sought an injunction against those practices. Count II alleged a bad faith termination of the plaintiff's franchise agreement in violation of the common law of the state of Indiana and sought an injunction against its termination. Count III alleged the defendants were illegally discriminating against the plaintiff in violation of the Ind.Code Ann. § 23–2–2.7–2 (Burns 1989 Supp.), and sought an injunction against this discrimination. Pursuant to plaintiff's motion, the Madison County Superior Court issued a temporary restraining order to prevent the termination of the plaintiff as an ASD for Tecumseh products.

On July 25, 1988, defendants Tecumseh, H.R.R. Zimmerman and Andy Zimmerman filed a verified petition for removal of the case from state court to federal court in the Southern District of Indiana. Tecumseh answered the complaint on August 16, 1988 by way of general admissions and denials and with the affirmative defense that there was no privity of contract between Implement Service and itself. Defendants H.R.R. Zimmerman, Andy Zimmerman and Donald Struck have filed a motion to dismiss for failure to state a claim upon which relief can be granted. Tecumseh has moved for summary judgment. The plaintiff opposes both the motion to dismiss and the summary judgment motion.

C. *12(b)(6) Motion to Dismiss*

The standard by which this court evaluates a motion to dismiss is clear. A Rule 12(b)(6) motion admits the well-pleaded allegations of the complaint but denies their legal sufficiency. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). Dismis-

sal for failure to state a claim is appropriate where a review of the complaint, taking all factual allegations in the complaint as true, reveals that no viable cause of action exists. *Greene v. Finley*, 749 F.2d 467, 468 (7th Cir.1984). "[I]f a plaintiff … pleads facts and the facts show that he is entitled to no relief, the complaint should be dismissed. There would be no point in allowing such a lawsuit to go any further; its doom is foretold." *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986).

Importantly, however, the court is not required to accept as true any legal conclusions or conclusory allegations that are unwarranted by the pleaded facts. *Murray v. City of Milford, Conn.*, 380 F.2d 468 (2d Cir.1967). The mere assertion of a right to recovery by the plaintiff is not enough to avoid a motion to dismiss if the facts pleaded are legally insufficient. *See, e.g.*, Wright & Miller, 5 Fed.Prac. & Proc. § 1357, at 596–97 (1969).

Normally, a motion to dismiss is decided only on the basis of the pleadings, without recourse to evidentiary support. In this case, however, the plaintiff has attached two documentary exhibits to its complaint and one to its Brief in Opposition to the Motion to Dismiss and the defendant has attached several documentary exhibits to its Verified Petition for Removal.

In *Beam v. IPCO Corp.*, 838 F.2d 242 (7th Cir.1988), the Seventh Circuit stated that:

> [i]f matters outside the pleadings are presented to and not excluded by the court in connection to a motion to dismiss for failure to state a claim, the district court is required to treat the motion to dismiss as a summary judgment motion. Failure to make this conversion and to provide litigants with appropriate notice to permit supplementation of the record can constitute reversible error.

*Id.* at 244 (citations omitted).

Not all "matters outside the pleadings" raise the *Beam* red flag, however. Documentary exhibits attached to the plaintiff's

---

**2.** The copy of the complaint that is before the court bears two file stamped dates.

complaint—in this case, a copy of the distribution agreement and the letter of termination—pose no problem under Rule 12(b)(6) because a district court is entitled to consider exhibits attached to the complaint as part of the pleadings. *Griswold v. E.F. Hutton & Co.*, 622 F.Supp. 1397, 1402–03 (N.D.Ill.1985). The defendants' submission of documentary exhibits, likewise, poses few problems. Two of the exhibits attached to the defendants' Verified Petition for Removal are copies of the exhibits that plaintiff attached to its complaint. Many others are copies of papers filed in the case while it was still in the state court. These filings are public records which may properly be considered by the court on a motion to dismiss. Wright & Miller, 5 Federal Practice & Proc. § 1357, p. 593 (1969). The affidavit of Andy W. Zimmerman is the only exhibit that cannot be considered on a 12(b)(6) motion without first converting the motion to dismiss into a motion for summary judgment pursuant to *Beam.* Because of this, the court has excluded Zimmerman's affidavit from consideration with respect to this motion.

The court, having reviewed the briefs submitted by the parties, the pleadings in the case (including the documentary exhibits which properly may be considered), and being duly advised, hereby GRANTS defendants' Motion to Dismiss with respect to all three counts of plaintiff's complaint.

### 1. Count I—Deceptive Franchise Practices

Count I of the complaint alleges that the ASD agreement between the plaintiff and H.R.R. Zimmerman contains provisions that are illegal under the Indiana Deceptive Franchise Practices Act. Specifically, the agreement contains a clause that purports to authorize H.R.R. Zimmerman, as the CWD, unilaterally to terminate the agreement with thirty days notice to Implement Service. That clause reads:

Authorized Service Distributorship status shall automatically terminate:

\* \* \* \* \* \*

2. On the thirtieth (30th) day following the date written notice of termination for any reason whatsoever is mailed ... (ii) by the Central Warehouse distributor to the Authorized Service Distributor and the Company....

ASD Agreement, reverse side, termination paragraph.

The plaintiff alleges that this clause violates Ind.Code Ann. § 23–2–2.7–1, which, in part, reads as follows:

It is unlawful for any franchise agreement entered into between any franchisor and a franchisee who is either a resident of Indiana or a non-resident who will be operating a franchise in Indiana to contain any of the following provisions:

\* \* \* \* \* \*

(7) Permitting unilateral termination of the franchise if such termination is without good cause or in bad faith. Good cause within the meaning of this subdivision includes any material violation of the franchise agreement.

(8) Permitting the franchisor to fail to renew a franchise without good cause or in bad faith. This chapter shall not prohibit a franchise agreement from providing that the agreement is not renewable upon expiration or that the agreement is renewable if the franchisee meets certain conditions specified in the agreement.

Ind.Code Ann. § 23–2–2.7–1 (Burns 1989 Supp.).

 Enacted in 1976, the Indiana Deceptive Franchise Practices Act seeks to protect franchisees by restricting the types of clauses that can be written into franchise agreements, by restricting the acts and practices of franchisors, and by establishing restrictions on the ability of a franchisor to terminate a franchise agreement. *See* Ind.Code Ann. 23–2–2.7–1, –2, & –3 (Burns 1989 Supp.).

In order to fall within the scope of this Act, however, the relationship between the parties must first fit within the definition of a "franchise," as that term is defined in § 23–2–2.5–1. According to that section,

an agreement must exhibit three characteristics in order to be a franchise agreement:

1. A franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;

2. the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

3. The person granted the right to engage in this business is required to pay a franchise fee.

Ind.Code Ann. § 23–2–2.5–1 (Burns 1984).

Focusing on the third of these three requirements for establishing a "franchise," the plaintiff would be required to prove at trial facts to establish the payment of a franchise fee to the defendants. If no franchise fee has been paid, then the Indiana Deceptive Franchise Practices Act cannot apply to this agreement to protect the plaintiff against the unilateral termination of its ASD agreement.

The Indiana Deceptive Franchise Practices Act defines a "franchise fee" as "any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business to sell, resell, or distribute goods, services or franchises under a contract agreement, including, but not limited to, any such payment for goods or services." Ind.Code Ann. § 23–2–2.5–1(i) (Burns 1984).

The plaintiff maintains that it paid an *indirect* franchise fee in one of three ways: (1) by performing free warranty work on Tecumseh products, (2) by conducting training schools for the RSD's that it enlisted, and (3) by selling and distributing marketing displays for the defendants. Complaint, ¶ 6 & ASD Agreement, reverse side, clauses g, i, & j. Plaintiff does not argue that it was required to pay any *direct* franchise fee.

Although a "plain and short statement of the claim" demonstrating a right to recover is adequate to avoid a 12(b)(6) motion, a plaintiff who pleads additional facts may plead itself out of court by demonstrating it has no right to recover. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723–24 (7th Cir.1986). This can occur not only when the plaintiff alleges facts in the complaint that affirmatively disprove an essential element of its claim (i.e. facts that demonstrate the statute of limitations has already run), but also when the alleged facts simply come up short (i.e. legally fail to establish the element). *Smith v. Grundy County Nat'l Bank*, 635 F.Supp. 1071 (N.D.Ill.1986) (district court grants motion to dismiss on grounds that plaintiff has pleaded facts in the complaint that demonstrate it has no federal civil RICO claim, but only a state law claim for breach of contract). Here, the plaintiff has done just that. By alleging specific facts concerning the payment of a franchise fee, the plaintiff has run the risk that those facts may not be legally sufficient to prove its case.

To determine whether plaintiff has pled itself out of court, I must first determine whether the alleged facts are adequate to constitute a "franchise fee" under Indiana's Deceptive Franchise Practices Act, construing all facts in a light most favorable to the plaintiff.

Unfortunately, there is no Indiana case law on the meaning of "indirect franchise fee." [3] As a result, I must determine what Indiana courts would decide had they been presented with this case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There are very few federal cases to turn to for guidance.[4] The

---

**3.** The only Indiana cases that even mention "franchise fee" under the Indiana Deceptive Franchise Practices Act are: *Snihurowycz v. AAMCO Transmissions, Inc.*, 418 N.E.2d 1190 (Ind.Ct.App.1981) and *Master Abrasives Corp. v. Williams*, 469 N.E.2d 1196 (Ind.Ct.App.1984). And neither of these cases addresses the question of what constitutes an *indirect* franchise fee.

**4.** There are only two federal cases that interpret "franchise fee" under Indiana's Franchise Act. *Lafayette Beverage Distributors v. Anheuser–Busch*, 545 F.Supp. 1137 (N.D.Ind.1982); and *Communications Maintenance, Inc. v. Motorola,*

one relevant federal case does, however, suggest that plaintiff has, indeed, pleaded itself out of court.

In *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202 (7th Cir. 1985) [hereinafter *CMI*], the Seventh Circuit upheld Judge Dillin's summary judgment against the plaintiff's Deceptive Franchise Practices Act claim. In granting summary judgment in favor of the defendants, Judge Dillin relied on the findings of fact that he made at the preliminary injunction stage of the case. At that stage, the judge decided that there was no material issue as to whether the plaintiff had paid a franchise fee to the defendant. *Id.* at 1206. After examining the record as a whole, the Seventh Circuit supported Judge Dillin's conclusion. *Id.*

The plaintiff in that case asserted that an indirect franchise fee had been paid to the defendant in three forms. The third form is particularly relevant to this case. The plaintiff argued that it performed subcontract repair work on customers' radios on behalf of the defendant for a price below the price that the defendant charged the customer. This, argued the plaintiff, constituted a price break to the defendant.

The Court of Appeals rejected this reasoning. It pointed out that the plaintiff was charging the defendant its standard rate for such repairs. The fact that the defendant made money on the deal by simply adding to the customer's bill reflected the value of its own goodwill and its need to recover the costs of negotiating and enforcing its contracts with its radio customers. *Id.* at 1207.

By way of distinction, the court discussed, in a footnote, some forms of indirect fees that it felt might satisfy the statute's requirement that a franchise fee be paid. *Id.* at 1206 n. 3. Because Implement

Service places so much reliance on this footnote (particularly its last sentence), it is appropriate to set out the footnote here in full:

> Although we have found no Indiana cases or regulations construing "indirectly" under the Act, we have found an Illinois state regulation interpreting the term "indirect franchise fee" under an Illinois Franchise Act similar to Indiana's. This regulation states that "an 'indirect franchise fee' might include a price or rent markup on equipment, real estate, raw materials or services which the franchisee is required by agreement to buy or lease from the franchisor." Ill.Rule 105 promulgated under 121½ Ill.Rev.Stat. § 701 *et seq.* (quoted in *Kocjancich v. Bridges*, 93 Ill.App.3d 550, 49 Ill.Dec. 4, 8, 417 N.E.2d 694, 698 (1981)). Conversely it would seem that a price discount given by a franchisee on goods or services it is required to render to the franchisor would constitute an indirect franchise fee.

*Id.*

Implement Service argues that this footnote precisely fits the type of "fee" that it paid to the defendant in this case. Even a cursory examination of this hypothesis, however, reveals the error in plaintiff's logic. In order to constitute a franchise fee, the "franchisee" must not only perform a service or provide a good *at a discount*, but also render this service or good *to the "franchisor."* The very text of *CMI*'s footnote three makes these two requirements clear. None of Implement Service's three alleged "fees" are actually rendered *to the defendants*; nor are they all performed at a discount.

Free warranty repair work, the first alleged fee, is performed for the benefit of the plaintiff's customers [5], not for the bene-

---

*Inc.*, 761 F.2d 1202 (7th Cir.1985). *Lafayette Beverage* is not relevant to this case. In that case, the district court held that paying $4,000 to promote the franchised product did not constitute the payment of a franchise fee under the Indiana Franchise Act because receipt of the franchise was not conditioned on this payment. *Id.* at 1150.

5. Plaintiff, under the mistaken belief that it can prevail if it can show no economic incentive on its part to provide this free warranty work to customers, argues that it was required to perform this warranty work even for those customers who purchased their Tecumseh product from another dealer. On its face, this argument is unpersuasive. The plaintiff's ability to sell Tecumseh products clearly would be enhanced

fit of the defendants. Not only are these services not rendered to the defendants, but the defendant Tecumseh also reimburses the plaintiff for this repair work, albeit at a rate that does not fully compensate the plaintiff for the costs it incurs.

Implement Service argues that it also paid an indirect fee by conducting training schools for the RSD's that it enlisted. Again, this form of service is not one rendered to the defendants. Because of this alleged fact the complaint has not adequately alleged the payment of a franchise fee. The case law coming from other states that have a franchise act similar to Indiana's supports my conclusion that such a normal business expense cannot constitute a franchise fee. *See OT Industries v. OT-tehdas Oy Santasalo–Sohlberg Ab,* 346 N.W.2d 162 (Minn.Ct.App.1984) (normal business expenses do not constitute the payment of a franchise fee).

The third alleged payment of an indirect fee was the distribution of marketing displays. This service, like the others, was not rendered to the defendants. Moreover, *OT Industries v. OT-tehdas Oy Santasalo–Sohlberg Ab,* 346 N.W.2d 162 (Minn. App.1984) persuasively suggests that payments of bona fide advertising expenses are "nothing more than ordinary business expenses and do not constitute a franchise fee." *Id.* at 167 (interpreting Minnesota's Franchise Act) (citing to *R.J.M. Sales & Marketing, Inc. v. Banfi Products Corp.,* 546 F.Supp. 1368, 1373 (D.Minn.1982)).

The requirement that the good or service must be rendered to the "franchisor" in order to qualify as a franchise fee is one that has been fully accepted by other states' courts. In *Premier Wine & Spirits v. E. & J. Gallo Winery,* 644 F.Supp. 1431 (E.D.Cal.1986), *aff'd* 846 F.2d 537 (9th Cir. 1988), a California district court discussed at great length the requirement that a fee be paid to the putative franchisor in order to be considered a franchise fee. *Id.* at 1438 (granting summary judgment in favor of defendant on plaintiff's claim that distri-

bution agreement violated South Dakota's franchise act on grounds that agreement was not a franchise agreement because no franchise fee had been paid by the plaintiff).

In reaching its decision that no franchise fee had been paid in that case, the *Premier Wine* court looked to both California's and Minnesota's franchise acts. The *Premier Wine* court pointed out that under California's franchise act " 'a payment to or for the account of third parties not affiliated with the franchisor is not a 'franchise fee' within the meaning of [the statute], even though the franchisee is required by the agreement to make such payment....' " *Id.* at 1438–39 (quoting a publication of the California Commissioner of Corporations entitled "Guidelines for Determining Whether an Agreement Constitutes a 'Franchise,' " published in CCH Business Franchise Guide, ¶ 7558 at 12,353.).

Given the clear language contained in footnote three of the Seventh Circuit's *CMI* decision, and the many relevant decisions coming from other jurisdictions, I can conclude only that the Indiana General Assembly did not intend the definition of "franchise fee" to include the mere rendering of a good or service at a discount to any third party. Because all of Implement Service's three alleged indirect fee payments are made to third parties and not to the defendants, they are legally inadequate to constitute a franchise fee. Count I of plaintiff's complaint must fail.

2. Count II—Bad Faith Termination of Franchise/Distributorship

Plaintiff's second count alleges that its agreement with H.R.R. Zimmerman was terminated in bad faith, specifically because of Andy Zimmerman's "personal animosity" toward John Newby, the president of Implement Services. Complaint, count 1 ¶ 13, at 3. Plaintiff asserts that the bad faith termination of this contract violates Indiana common law, and seeks damages

by its ability to promise its own customers that any ASD would be glad to perform free warranty work on the product, even though that ASD did not make the initial sale. Even assuming

for a moment that plaintiff had no economic incentive to perform this repair work, the lack of such an incentive does not magically transform plaintiff's work into a franchise fee.

including punitive damages for this violation.

■ Plaintiff's argument is without merit. As already discussed, the agreement between the plaintiff and H.R.R. Zimmerman was not a franchise agreement. *Supra.* As a result, the Indiana Deceptive Franchise Practices Act cannot protect the plaintiff from bad faith terminations.

■ Plaintiff argues that even distributorship agreements may be terminated only in good-faith under Indiana common law. Plaintiff's brief is, however, devoid of citation to any Indiana law supporting its position.[6] The *CMI* case, in fact, directly opposes plaintiff's contention.

In *Communications Maintenance, Inc. v. Motorola, Inc.,* the plaintiff raised a claim identical to the one raised here. 761 F.2d at 1210. In that case, the plaintiff tried to prevent its distributor from cancelling its distribution agreement by claiming the cancellation violated Indiana's Franchise Act, and by claiming that an implied good cause for termination clause should be read into the agreement.

The district court ruled that the contract was not a franchise agreement, and was therefore not controlled by Indiana's Deceptive Franchise Practices Act. The court also refused to read any implied terms into the contract.

On appeal, the Seventh Circuit upheld the district court's decision, using language that is equally applicable to this case:

> The Indiana Supreme Court has stated that "[i]f the meaning of a contract is clear, its effect will not be controlled by an erroneous construction placed on the

agreement by the parties." *Walb Construction Co. v. Chipman,* [202 Ind. 434] 175 N.E. 132, 135 (1931). Furthermore, in *Kincaid v. Lazar,* 405 N.E.2d 615 (Ind.Ct.App.1980) an Indiana appellate court stated that "[i]n the absence of ambiguity, it is not within the function of the courts to look outside the instrument to arrive at the intention of the parties." *Id.* at 620 (citing *Jenkins v. King,* [224 Ind. 164] 65 N.E.2d 121 (1946)).

*Id.* at 1210.

The agreement in this case clearly sets out the parties' intent with respect to termination: "Authorized Service Distributorship status shall automatically terminate ... (2) on the thirtieth day following the date written notice of termination for any reason or without any reason whatsoever is mailed...." ASD Agreement, reverse side, termination paragraph. The plaintiff does not claim that this clause is ambiguous or unconscionable. Given the clear meaning of the contract, the plaintiff's claim for relief under Indiana common law fails to state a claim upon which relief can be granted.

3. Count III—Unlawful Discrimination under the Indiana Deceptive Franchise Practices Act

Count III, like Count I, is based on an alleged violation of Indiana's Deceptive Franchise Practices Act. To summarize the plaintiff's cause of action, the plaintiff alleges that the ASD Agreement allowed it to purchase Tecumseh products from only H.R.R. Zimmerman as its CWD. Other Indiana ASD's, specifically, any Indiana

---

6. Plaintiff's brief does refer to two decisions from other jurisdictions to support its proposition that good cause is required for the termination of non-franchise distributorship agreements. These cases are unpersuasive.

In *Baker v. Ratzlaff,* 1 Kan.App.2d 285, 564 P.2d 153 (1977), the contract at issue did not have a termination-at-will clause. In the case at bar, there is, of course, a clause authorizing either party to terminate the agreement at will. In *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978), the court determined that the relationship between the plaintiff and the defendant was a franchise. Even with this finding, the court was hesitant to imply a good

cause for termination requirement into the agreement, but did so only after determining that the agreement lacked a termination-at-will clause. That court specifically stated that it would not have read the good cause for termination clause into the contract had there been an explicit provision allowing termination-at-will. *Id.* at 742 n. 8. California, a leading state in the development of the covenant of good-faith and fair dealing, has itself refused to read a good cause for termination requirement into mere distributorship agreements. *See, e.g., Premier Wine & Spirits v. E. & J. Gallo Winery,* 644 F.Supp. at 1436.

ASD's located in a county bordering on Ohio, were allowed to make purchases from either H.R.R. Zimmerman, which is based in Illinois, or the CWD based in Columbus, Ohio. This, argues the plaintiff, constitutes illegal discrimination under Ind. Code Ann. § 23–2–2.7–2, which states that:

It is unlawful for any franchisor ... to engage in any of these acts and practices in relation to the agreement:

\* \* \* \* \* \*

(5) Discriminating unfairly among its franchisees....

Ind.Code Ann. § 23–2–2.7–2 (Burns 1989 Supp.).

To recover under this count, the plaintiff must fit within the definitions set out in the Deceptive Franchise Practices Act. Because the plaintiff has alleged facts that indicate it did not pay a franchise fee to the defendants, as was discussed under Count I, the Deceptive Franchise Practices Act does not apply to this count either. As a result, the plaintiff has failed to state a claim under this count.

Even if the plaintiff had paid a franchise fee, and the act were to apply in this case, the plaintiff has alleged an additional fact under Count III that demonstrates it has no cause of action. A key element of a claim of unfair discrimination under the act is a showing that the plaintiff is being treated differently from those franchisees who are "similarly situated." *See Canada Dry Corp. v. Nehi Beverage Co.,* 723 F.2d 512, 520–22 (7th Cir.1983) (district court should have directed verdict for defendant on claim of discrimination because plaintiff's evidence at trial was insufficient on the issue of "similar situation," which issue is a part of plaintiff's prima facie case).

In *Canada Dry,* the plaintiff alleged that it had been unfairly discriminated against because it was the only one of nine midwestern bottlers to be excluded from an advertising program. The court concluded that the plaintiff was not "similarly situ-

ated" to the other midwestern bottlers with respect to the relevant considerations of financial and marketing conditions. *Id.*

Whether a plaintiff/franchisee is "similarly situated" to other franchisees will, of course, depend on which factors about the franchisees are compared. The factors compared should be those factors that are relevant to the underlying business decision being made. For example, in the *Canada Dry* case, the relevant factors that were compared by the court all affected the success of the proposed advertising program.

In this case, the plaintiff has alleged discrimination arising out of the allocation of CWD's. The CWD's are set up geographically. Each CWD services a specific part of the country. Complaint at 1. The defendants' decision to assign an ASD to a particular CWD is driven by considerations of geography. Because of this, the plaintiff must be able to demonstrate, at some point in the case, that it is geographically "similarly situated" to those ASD's that are permitted to deal with either H.R.R. Zimmerman or the Columbus, Ohio CWD. On the very face of the complaint, however, the plaintiff alleges facts that make this proof impossible. The ASD Agreement states the plaintiff's primary territory is located in Madison County, Indiana. This county does not touch upon the Ohio border.[7] The plaintiff has alleged facts that show that it is not "similarly situated" to those franchisees receiving more favorable treatment. Without this key element of its prima facie case, the plaintiff cannot recover on its claim of unfair discrimination. There is no need to proceed further with this claim; "its doom is foretold." *American Nurses' Ass'n v. Illinois,* 783 F.2d at 727.

### 4. Summary of Motion to Dismiss

The plaintiff's complaint fails to state a claim upon which relief can be granted under all three counts. According-

---

7. A court may take judicial notice of adjudicative facts when considering a motion to dismiss. Fed.R.Evid. 201(f); *Ray v. Indiana & Michigan*

*Electric Co.,* 606 F.Supp. 757, 761 n. 2 (N.D.Ind. 1984), *aff'd,* 758 F.2d 1148 (7th Cir.1985).

**1182**

ly, the case is dismissed against H.R.R. Zimmerman and Andy W. Zimmerman.[8]

### D. *Motion for Summary Judgment*

▬ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be entered if the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The party seeking summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This court must view the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Box v. A. & P. Tea Co.*, 772 F.2d 1372, 1375 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986).

### 1. Tecumseh is Not a Party to the Contract

▬ The defendant argues that it is entitled to summary judgment on all counts of plaintiff's lawsuit because it is not a party to the contract, nor is it in privity with the parties to the contract. It is basic law in Indiana that suits based on contract may be brought only against a party to the contract or against those in privity with the party. *Evansville & S.I. Traction Co. v. Evansville Belt Ry.*, 44 Ind.App. 155, 162–63, 87 N.E. 21, 23–24 (1909); and *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727 (Ind.Ct. App.1984).

▬ Normally the parties to a contract can be identified as a matter of law by the very terms of the contract, as long as there is no ambiguity. *Sunman–Dearborn Community School Corp. v. Kral–Zepf–Freitag & Assocs.*, 167 Ind.App. 339, 338 N.E.2d 707, 709 (1975). In this case, the terms of the contract unambiguously indicate that Tecumseh is not a party to the contract.

> This agreement is between Applicant [Implement Service] and Central Warehouse Distributor [H.R.R. Zimmerman]. It is agreed by all parties that neither Tecumseh Products Company nor Lauson–Power Products Parts Depot [a division of Tecumseh] is a party to this agreement, except that the appointment of Applicant as an Authorized Service Distributor must be approved by Lauson–Power Products Parts Depot indicating approval thereof hereon.

ASD Agreement, reverse side, miscellaneous paragraph.

This clause suggests that Tecumseh's only role in the contract was to provide third party approval as a condition precedent to the creation of the contract. This sort of arrangement is permitted, and does not make Tecumseh a party to the contract itself. *See Cole Associates, Inc. v. Holsman*, 181 Ind.App. 431, 391 N.E.2d 1196 (1979).

### 2. Tecumseh May Not be Sued as a Third Party Beneficiary

▬ Without presenting any evidence to support its claim or to counter the contract clause cited above, the plaintiff responds that Tecumseh is a third party beneficiary of the contract, and is vested with the right to "enforce or defend the agreement." Plaintiff's Brief in Opposition to Motion for Summary Judgment, at 2. Even if Tecumseh were a third party beneficiary (and this is far from clear)[9], plaintiff's assertion would be only half right. Tecumseh could, as a third party beneficiary, sue in some circumstances for enforcement of the contract. However, Tec-

---

**8.** A dismissal for failure to state a claim upon which relief can be granted is a dismissal on the merits and is *res judicata. Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir.1983).

**9.** In Indiana, third party beneficiaries come in two forms: creditor beneficiaries and donor beneficiaries. Most likely, Tecumseh is neither of these, but instead is what the law terms an "incidental beneficiary"—one who benefits from the contracts of another, but whose benefit was not the intent of the contracting parties. An incidental beneficiary has no rights or obligations under the contract. *Mogensen v. Martz*, 441 N.E.2d 34, 36 (Ind.Ct.App.1982).

umseh could not be sued as a third party beneficiary. Third party beneficiaries have no contractual obligations, only benefits. *Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co.*, 44 Ind.App. at 162–63, 87 N.E. 23–24. Thus, even if Tecumseh were a third party beneficiary it could not be sued on the contract.

### 3. Summary of Motion for Summary Judgment

Because there is no dispute in the evidence as to whether Tecumseh is a party to the lawsuit, Tecumseh's motion for summary judgment is GRANTED. Even if Tecumseh were a party to the lawsuit, it would be entitled to summary judgment on the basis of this court's disposition of the other defendants' motion to dismiss.

### E. *Plaintiff's Petition for Contempt Citation*

In view of the disposition of the case, plaintiff's Petition for a Contempt Citation and Order Enforcing the Restraining Order is DENIED. On July 29, 1988, the parties stipulated to a temporary restraining order that this court approved on the same day. The restraining order was originally issued by the Madison Superior Court, and was approved by this court primarily because all the parties stipulated to it.

The plaintiff now alleges that the defendant H.R.R. Zimmerman has violated the T.R.O. by refusing to schedule and perform training schools and by systematically deleting plaintiff's RSD's by forcing them to cancel their dealership agreements with the plaintiff. A trial court is given broad discretion in creating, modifying, and enforcing preliminary injunctions. *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256–57 (2d Cir.1984). The acts alleged by plaintiff do not clearly establish a violation of the T.R.O. A hearing would need to be held in order to determine whether a violation has occurred and to determine the extent of plaintiff's damages. Even if a violation were proved, there would be no simple remedy, given today's disposition of the case. For all these reasons, I DENY plaintiff's petition.

### F. *Conclusion*

For all of the above reasons, this case is: dismissed against Donald Struck on grounds that he is an improperly named party-defendant; dismissed against H.R.R. Zimmerman and Andy W. Zimmerman on grounds that plaintiff has failed to state a claim upon which relief can be granted; and summary judgment is entered against Implement Service and in favor of Tecumseh on grounds that Tecumseh is neither a party to the contract, nor in privity with a party to the contract.