In re Estate of Magdalena W. Cook, an Insane Person. Annie Corr, Plaintiff in Error, v. Chicago Title & Trust Company, Defendant in Error.

Gen. No. 37,841.

Opinion filed November 20, 1935.

WELCH & HOFFMAN, of Chicago, for plaintiff in error; NINIAN H. WELCH and LESTER N. SALWIN, of Chicago, of counsel.

ASHCRAFT & ASHCRAFT, of Chicago, for defendant in error; RUSSELL F. LOCKE, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The petitioner in error seeks to review the record for the purpose of a reversal of an order of the circuit court of Cook county entered on November 28, 1933, in a proceeding had upon appeal from the probate court of Cook county. This order denied the petitioner an interest in a bank account in the First Union Trust and Savings Bank, which was formerly in the names of the petitioner and Magdalena W. Cook, the defendant in error. Since the deposit was made, Magdalena W. Cook has been declared an insane person.

The action is based on the petition of Annie Corr, filed in the probate court of Cook county, and the answer of the conservator. The petition alleges that Annie Corr had been employed as a companion and housekeeper by Magdalena W. Cook during 1925, and for many years prior thereto, and that Magdalena W. Cook owed the petitioner, on said date, a debt of gratitude and considerable money; that Magdalena W. Cook established .a bank account at the First Union Trust and Savings Bank in an amount approximating $5,000, and that said amount was established jointly with the petitioner, with direction to the petitioner on the part of Magdalena W. Cook that if the petitioner should ever be in need said account was to be enjoyed by the petitioner jointly with Magdalena W. Cook.

The petition prays that the court direct the conservator to pay out of the proceeds of the estate of Magdalena W. Cook, one-half of the account established at the First Union Trust and Savings Bank. The conservator's answer was in the form of a denial.

The facts in support of the petition are that during 1926 and 1927, the petitioner, Annie Corr and Magdalena W. Cook, lived together in an apartment in Chicago. Mrs. Cook was a widow of substantial means, and employed the petitioner as her companion and housekeeper. It further appears from the facts that in April 1926, Mrs. Cook opened a joint account, in her name and in that of the petitioner, at the First Union Trust and Savings Bank, and in this account made an initial deposit of $4,500; that upon the opening of the account, the petitioner and Mrs. Cook signed an agreement with the bank, contained in the joint signature card. The joint signature card is as follows:

"The undersigned hereby agree to the By-Laws, Rules and Regulations governing the Savings Department of First Trust and Savings Bank, Chicago, and further agree that all deposits in this account, or any part thereof, or any interest or dividend thereon, may be paid to any of the undersigned, whether the other or others be living or not, on the receipt or acquittance of any of the undersigned."

It appears from the evidence that in the fall of 1926, Mrs. Cook had a conversation with the witness Emily R. McDonald about a bank account, and produced a bank book issued by the First Union Trust and Savings Bank and stated that she had opened the account jointly with the petitioner; that she wished to make a gift to her, and that she wanted her to have the money to use the same as she, Mrs. Cook, used it; that at any time the petitioner wished, she was at liberty to use it; that she, Mrs. Cook, had entered into this joint account for herself and the petitioner; that their names were both on it; that she was fixing this gift for the petitioner to have, and that they were both using it.

There was also the evidence of the witness Edith Hansen that during a visit with Mrs. Cook in the fall of 1926, Mrs. Cook talked with her about a bank ac-

count; that Mrs. Cook produced a bank book and stated that she was giving it to Nancy for Nancy to have; and that a passbook was kept in a desk to which Annie Corr had free access at all times.

Magdalena W. Cook was adjudged insane, and on or about October 5, 1927, the Chicago Title & Trust Company was appointed conservator of her estate. The conservator received the passbook, which was found in a hotel vault box and which evidenced the joint account of Mrs. Cook and Annie Corr in the First Union Trust and Savings Bank. On November 25, ·1927, the conservator had the joint account, which had a credit balance of $4,163.25, transferred to its own name as conservator, and a new passbook issued to it. This balance was later withdrawn by the conservator.

The question here involved is: Has this court jurisdiction to direct that the petitioner is entitled to one-half of the amount deposited by Magdalena W. Cook in the joint account? In construing this joint account established by the parties, it would seem that it was clearly the intention of Mrs. Cook that either of the parties to the signature card could withdraw moneys from the bank any time prior to the death of one of the parties, and that even after the death of one of the parties the survivor could draw on the fund. But this in and of itself does not give the court the right to direct division to be made of the moneys deposited. The contract is an entire one, and by its terms is not divisible. We doubt the wisdom of the petitioner's contention that by the terms of the contract the court could divide the moneys between the parties and hold that such division would be proper.

There was a substantial amount on deposit in the account, which was governed by the terms of the contract, and it is not for this court to pass upon the question of the propriety of the contract, but only to determine the question as it is presented. In deter-

mining the right of the petitioner to one-half of this fund, it would seem to us that the making of such division would be clearly a violation of the terms of the agreement. As the parties are still living, the question of the right of a survivor is not involved. The language of the contract is plain. The parties could withdraw the fund, or as much of it as they each needed during the continuance of the deposit, and even in the event of the death of one of the parties, which did not occur, the other could withdraw the fund.

If we accept the suggestion made by the petitioner that the fund be divided, we would be interjecting into this contract by construction a provision never intended by the parties. The court always takes the contract as it finds it and attempts from the four corners of the instrument to construe and carry out the intention of the parties.

The position of this court is sustained by what has been said in 13 Corpus Juris on the subject of contracts, at page 561:

"1. As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. Ordinarily when one party contracts to do certain work or to perform certain services, and the other to pay a certain price for the same, the contract is to be regarded as entire, and an agreement to do several things at several times is to be regarded as divisible. But it is very difficult to lay down a rule which will apply to all cases, and consequently each case must depend very largely on the terms of the contract involved. A contract is not entire and indivisible because embraced in one instrument and signed

by the same parties, nor is it severable because embraced in more than one instrument, nor because only partially to be performed within the state. A contract in the alternative has been held not severable.

"2. Primarily the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject matter of the agreement. A contract may both in its nature and its terms be severable and yet rendered entire by the intention of the parties."

Upon the question here discussed, the Supreme Court in the case of *City of Chicago v. Sexton*, 115 Ill. 230, held:

"We entirely concur in the ruling of the Superior court on the first ground urged for a reversal of the judgment below, which is, that that court erred in not holding that the contract between Sexton and the city is, by its terms, divisible, and that therefore a forfeiture of a part did not affect the residue. In our opinion, this construction of the contract is not admissible. The undertaking of Sexton is, 'for and in consideration of the payments to be made. . . . to furnish, deliver, set up, place and fix complete all the iron work required in the erection of a building for a city hall,' etc.; and the undertaking of the city is 'to pay to said party of the first part, when this contract shall be wholly carried out and completed on the part of said contractor, and when said work shall have been accepted by said mayor, the sum of $105,302.69.' It is true the amount is made up by stating the estimated cost of each story separately, and the roof, and then adding the whole together; but this was, evidently, merely for the purpose of furnishing the data upon which the estimate was made, for there is nowhere any agreement to receive and pay for the work by stories. On the contrary, it has been seen payment

is to be made of the aggregate amount when the contract shall be wholly carried out. . . .

"We are clear in the opinion that the contract is an entire one, in which the consideration for each undertaking is the consideration for every undertaking, and in which the benefits presumed to result from the performance of the entire contract, instead of benefits presumed to result from the performance of separate parts of the contract, were in anticipation."

From the conclusions reached by us it would appear from the contract and our opinion that the action by the petitioner was not properly maintainable and for the reasons stated, the order of the trial court is affirmed.

*Order affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.