JAMES B. KOCJANCICH, a/k/a James B. Kay, Plaintiff and Counterdefendant-Appellee, *v.* RONALD R. BRIDGES *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (5th Division)    No. 79-2084

Opinion filed February 13, 1981.

Paul Harrison Stacey, of Law Offices of Jack R. Davis, of Chicago, for appellants.

Berger & Herman, Ltd., of Chicago (Marvin L. Herman, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants Ronald R. Bridges (Bridges) and Wide Scope Personnel, Inc. (Wide Scope) appeal from the entry of summary judgment in favor of plaintiff in an action brought under the Franchise Disclosure Act (the Act) (Ill. Rev. Stat. 1977, ch. 121½, par. 701 *et seq.*). They contend that the trial court erred (1) in granting judgment on the issue of damages (a) because a genuine question of triable fact existed as to defendants' right to restitution as provided in the Act and (b) because the motion had been

previously denied and no subsequent notice of motion had been filed; (2) in failing to enforce defendants' right to restitution under the Act; and (3) in finding that a payment to defendants as settlement for inducing an employee of defendants to work for plaintiff was a franchise fee as defined in the Act.

The record discloses that plaintiff and Wide Scope entered into a joint enterprise agreement to establish an employment agency. The business was to be operated by plaintiff under Wide Scope's logo, and the agreement provided in part that plaintiff was to pay defendants a five-percent commission on gross annual sales up to $100,000 and seven percent on the next $50,000, and that neither party would solicit or accept employment of an employee or ex-employee of the other without written waiver.

It appears that the agency was opened in August 1976 and that in May 1977 a dispute arose over plaintiff's desire to employ one Michele Gasior, who at that time worked for Wide Scope, and an agreement was reached whereby plaintiff paid Wide Scope $5,000 for the right to hire her.

In September 1977 the parties agreed to terminate the relationship—following which plaintiff sued defendants for rescission of the agreement and for damages under section 21 of the Act (Ill. Rev. Stat. 1977, ch. 121½, par. 721), asserting in substance that the agreement was for the sale of a franchise as defined in the Act, and because it was in violation of the Act he was entitled under section 21(2) to the return, with interest, of the full amount paid by him for the franchise less any income received and to attorney's fees. Defendants counterclaimed *inter alia* for an accounting of the franchise income. Plaintiff then moved for summary judgment as to all issues. On May 19, 1978, the trial court granted summary judgment only as to the rescission issue and ordered "that the proof of damages and attorney's fees is to be set for trial in the future."

The record discloses that the next action of the court was on September 27, 1978, when it ordered "that this cause be placed on the trial call," and then on May 4, 1979, the case was set for pretrial conference on July 6, 1979, on which date an order was entered setting the case "for status report on July 26, 1979."

Counsel for defendants was not present at the July 26 hearing, at which plaintiff filed a petition for attorney's fees under section 21(2)(a) of the Act. The issues as to damages and attorney's fees had not been "set for trial" as provided in the May 19, 1978, order nor had any motion been made or notice given to defendants that they would be considered on July 26. The trial court, nevertheless, granted summary judgment on those issues in the amount of $14,205.63—of which $9,014.63 represented franchise fees ($4,014.63 in commissions paid to defendants and $5,000 for the Gasior settlement), $3,750 for attorney's fees, and $1,441 interest. This

appeal is from certain aspects of that judgment order, but no appeal has been taken from the initial order granting summary judgment as to the rescission issue.

OPINION

We turn first to defendant's contention that by virtue of the application of the Act, a genuine factual question was created which precluded the entry of summary judgment on the issue of damages. We agree.

■■ Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57), supplemented by Supreme Court Rules 191 and 192 (Ill. Rev. Stat. 1979, ch. 110A, pars. 191, 192), provides for summary judgment. The purpose of that procedure is, where appropriate, to facilitate litigation and expedite trial by providing a means to avoid the expense and delay of trial. (*Barnes v. Rakow* (1979), 78 Ill. App. 3d 404, 396 N.E.2d 1168; *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70.) It is not designed to try issues of fact (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675; *Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293; *Century Display Mfg. Corp. v. D. R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 360 N.E.2d 1346) and, due to its drastic nature, should be used with caution so as not to preempt the right to trial by jury where a genuine factual dispute exists (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6).

Thus, summary judgment can be entered only where it is determined that no genuine issue of material fact is presented and the movant is entitled to judgment as a matter of law. (*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241; *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197; *Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 395 N.E.2d 119.) If the opponent fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper. Where, however, it is determined from the pleadings and supporting documents that a genuine factual dispute exists, the salutary effect of summary judgment is lost and entry thereof is improper. (*Century Display Mfg. Co. v. D. R. Wager Construction Co.*) The courts have further required that the right of the moving party to summary judgment must be clear, undisputed, and free from doubt (*Cuthbert v. Stempin; Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964) and that the pleadings and supporting documents be construed strictly against the movant and liberally in favor of the opponent (*Doris v. Bradley* (1979), 76 Ill. App. 3d 890, 395 N.E.2d 636; *Kolakowski v. Voris*).

In pertinent part, section 21 of the Act provides:

"*(2) Rescission.* (a) Every sale of a franchise made in violation of

this Act shall be voidable at the election of the franchisee or subfranchisor as provided in subsection (b) of this Section. The franchisor, subfranchisor, franchise broker, salesperson or other person on behalf of whom such sale was made or who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such franchisee or subfranchisor for (1) the full amount paid, together with interest at the legal rate from the date of payment less any income received on the franchise and (2) reasonable attorney's fees." Ill. Rev. Stat. 1977, ch. 121½, par. 721(2)(a).

Crucial to our determination that summary judgment was improperly granted in the case at bar is the phrase "less any income received on the franchise" from section 21(2)(a) of the Act quoted above. We find persuasive defendants' argument that by virtue of this phrase a genuine issue of triable fact exists as to the amount that may be due defendants in restitution as income received on the franchise. In this regard, we note that plaintiff's complaint asserts entitlement to the full amount paid for the franchise "less any income received"; that defendants' counterclaim sought an accounting of the franchise income to determine whether they were entitled to any additional commissions; and that, in a memorandum supporting their reply to plaintiff's motion for summary judgment, defendants assert that in seeking restitution of the amounts he paid for the franchise plaintiff must subtract "any income he has received on the franchise." Furthermore, we note that included in the damages awarded was the return of $4,014.63 for commissions paid by plaintiff to defendants based upon five percent of the franchise gross income. Thus, those commissions were paid on a gross of $80,292.60. Moreover, the trial court did not consider that commissions were not paid either during the first 60 days or the final 30 days of the agreement and that there were accounts receivable for placements made where the fees were not collected—so that, arguably, the $80,292.60 was the minimum income of the franchise.

In any event, plaintiff failed to assert either in his pleadings or supporting documents that he did not receive net income from the franchise; rather, in his discovery deposition, he characterized the franchise "as successful" and that it "did not operate at a loss" while the agreement was in effect. Thus, to the extent that the income received by plaintiff from the franchise was not determined, there remains a factual issue as to the amount of damages to which plaintiff may be entitled under the Act and, in view thereof, the summary judgment as to damages was improperly granted.

By reason of his holding, it is unnecessary that we consider the additional contention of defendants that summary judgment was improperly granted because it had been previously denied with no subsequent

motion having been filed and no notice given that summary judgment as to damages would be considered on July 26, 1978.

With respect to defendants' contention that the trial court erred in failing "to enforce [their] statutory right to restitution" under section 21 of the Act, we believe it sufficient to note that in view of our finding that summary judgment as to damages was improperly granted, defendants have the right under section 21 to an accounting of franchise income received by plaintiff.

Defendants further argue that the trial court erred in finding that the $5,000 paid by plaintiffs to defendants as a settlement for inducing Michele Gasior to leave defendants' employ was a franchise fee under the Act.

"Franchise fee" is defined in the Act, in relevant part, as follows:

"[A]ny fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payment for goods or services, provided that the Administrator may by rule define what constitutes an indirect franchise fee * * *." Ill. Rev. Stat. 1977, ch. 121½, par. 703(14).

Plaintiff argues that in accordance with the above-quoted provision and Rules 104 and 105 promulgated under the Act, the $5,000 settlement constituted a franchise fee. Those Rules provide as follows:

"Rule 104. 'Franchise fee' within the meaning of Sec. 3(14) includes any fee or charge which the franchisee is required to pay to the franchisor or an affiliate of the franchisor for the right granted to the franchisee to engage in the franchise business regardless of the designation given to or the form of the fee or charge or whether payable in lump sum or installments, definite or indefinite in amount, or partly or wholly contingent on future sales, profits or purchases of the franchise business or other factors.

Rule 105. An indirect franchise fee within the meaning of Sec. 3(14) includes, but is not limited to, an element of the price or rent charged for equipment, real estate, raw materials or services which the franchisee is required by agreement to buy or lease from the franchisor, an affiliated company of the franchisor or an unaffiliated company who pays any consideration to the franchisor or an affiliate. * * *"

Our research reveals that the courts of this State have not had occasion to consider the meaning of franchise fee under section 3(14) (Ill. Rev. Stat. 1977, ch. 121½, par. 703(14)). We think it clear, however, that the $5,000 payment in question here is excluded from the definition of franchise fee, as it was not made in return for "the right to enter into a

business or sell, resell or distribute goods, services or franchises under an agreement" as required by section 3. Plaintiff's reliance on the Rules is also misplaced, as Rule 104 is addressed to "the right granted to the franchisee to engage in the franchise business," and Rule 105 pertains to indirect franchise fees, including property or services "which the franchisee is required by agreement to buy or lease from the franchisor." Those rules are designed to give greater specificity only to payments made under franchise agreements and have no application to the $5,000 payment here.

■■ ■ The franchise agreement expressly prohibited the parties from hiring or soliciting to hire each other's employees or ex-employees unless waived, and it should be noted that plaintiff was not required by the agreement to purchase or rent the services of employees from defendants. In entering into the agreement permitting plaintiff to employ Michele Gasior, the parties were availing themselves of the provision in the franchise agreement permitting a waiver of the employment prohibition. This agreement was severable from the franchise agreement; that is by its nature and purpose it was susceptible of division and apportionment. (See *Furst v. Board of Education* (1959), 20 Ill. App. 2d 205, 155 N.E.2d 654; *In re Estate of Cook* (1935), 282 Ill. App. 412.) Moreover, in view of the fact that the franchise had been in operation for more than eight months when the dispute over the hiring of Gasior arose, although the loss of Gasior may have reduced the volume of defendants' sales we find that the resolution of the dispute was unrelated to plaintiff's continued right to hold the franchise. We therefore hold that the $5,000 payment was not a franchise fee and thus was improperly included in the judgment for damages.

The case law of other jurisdictions which have ruled on the question of franchise fees affords some guidance. In *Martin Investors, Inc. v. Vander Bie* (Minn. 1978), 269 N.W.2d 868, the court found that an initial $30,000 investment by franchisee, a one-percent share of loan proceeds reserved to franchisor, and $400 that franchisee was required by contract to pay for each unit of computer service purchased from franchisor all constituted a franchise fee within the Minnesota statute. This finding was consistent with the statute, which provided in relevant part that "[f]ranchise fee means any fee or charge that a franchisee * * * is required to pay * * * for the right to enter into a business * * * under a franchise agreement, including, but not limited to, the payment * * * of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales [or] any payment for goods or services." (Minn. Stat. Ann. §80C.01 subd. 9 (West Supp. 1980).) In *American Oil Co. v. Columbia Oil Co.* (1977), 88 Wash. 2d 835, 567 P.2d 637, the court found that the payment by plaintiff for tires, batteries, accessories and fuel oils,

as well as rental of a sign and credit card imprinter, were specifically excluded from the definition of franchise fee, as they were amounts realized from the purchase or lease of property at a fair market or rental value and from a bona fide wholesale transaction. This finding likewise was consistent with the statute in question, which provided in relevant part that "the following shall not be considered payment of a franchise fee: (a) the purchase [of] * * * goods at a bona fide wholesale price; * * * (e) the purchase or lease [of] * * * supplies or fixtures necessary to enter into the business * * *." (Wash. Rev. Code Ann. §19.100.010(11)(1978).) Thus, these courts have required that a payment alleged to be a franchise fee must fit precisely within the statutory definition thereof.

For the reasons stated, the summary judgment on the issue of damages is reversed, and the case is remanded for further proceedings not inconsistent with the content of this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.