**P & W SUPPLY CO., INC. and EPW Distribution Center, Plaintiffs,**

**v.**

**E.I. DU PONT de NEMOURS & CO., INC., Defendant.**

**No. 89-C-20293.**

United States District Court,
N.D. Illinois, W.D.

June 7, 1990.

Elmer C. Rudy, David L. Wettengel, Williams & McCarthy, Rockford, Ill., for plaintiffs.

David L. Doyle, David K. Greene, Phelan, Pope & John, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROSZKOWSKI, District Judge.

This action comes before the Court on Defendant's motion to dismiss Plaintiff's complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth in the opinion below, this Court denies Defendant's motion to dismiss Count I of the complaint but grants Plaintiff thirty days to file an amended complaint relating to the indirect franchise fee issue (*for paint mixing machines*) as set out below. Further, the Court grants Defendant's motion to dismiss Count II of the complaint without leave to amend for failure to state a cause of action upon which relief can be granted. Finally, the Court denies Defendants motion to dismiss Count III of the complaint.

## BACKGROUND .

Plaintiff, P & W Supply Co., Inc. and its sister company EPW Distribution Center ("P & W Supply"), originally brought this action under the Illinois Franchise Disclosure Act of 1987, Ill.Rev.Stat. ch. 121½, par. 1701 et seq. ("IFDA"). Plaintiff alleges that it was a franchisee of the defendant, E.I. Du Pont de Numours & Co. ("Du Pont"), and that Defendant violated the provisions of the IFDA by unfairly discriminating against them and by terminating the franchise agreement without good cause.

Accepting Plaintiff's allegations as true for purposes of this motion only, *Vaden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987); *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir.1978), the following facts form the basis of this lawsuit.

On February 29, 1980, Plaintiff entered into an agreement with Defendant in Rockford, Illinois engaging Plaintiff as a seller and distributor or "jobber"[1] of Du Pont refinish products for auto body repair shops. The terms of the contract stated, *inter alia*, that "JOBBERS relationship to DU PONT under this agreement shall be that of an independent contractor, and JOBBER is not authorized to present itself to the public or create in its customer's minds the impression that it is a legal representative or agent of Du Pont." The contract also provided that either party

---

1. Webster's Dictionary defines "jobber" as "a wholesaler who operates on a small scale or who sells only to retailers or institutions."

could terminate the agreement with or without cause by sending a thirty day notice of termination.

Plaintiff and Defendant entered into a revised agreement on August 6, 1984. The terms of this agreement were substantially similar to the first contract. In 1989, Du Pont again revised its "Jobber" agreement and disseminated this agreement to Du Pont Jobbers around the country for their signature. The terms of this contract, however, differed in a number of crucial points from the previous agreements. The proposed agreement provided that Plaintiff would be solely responsible for all claims arising out of its sales to persons other than refinishers, or in systems for uses other than those recommended or approved by Du Pont. The contract also limited Plaintiff's right to transfer ownership of its business to employees or other persons. Plaintiff's president refused to sign this new agreement and continued working under the terms of the 1984 contract. On June 5, 1989, Defendant formally terminated the old "Jobber" agreement.

In Count I of the complaint, Plaintiff contends that it was a franchisee of Defendant under the provisions of the IFDA. Count II of the complaint alleges that as a result of Plaintiff's refusal to sign the revised contract, Du Pont discriminated against them, in violation of section 18 of the IFDA, by not selling them "a specific Du Pont product" and terminating the agreement without good cause. Finally, Plaintiff alleges in Count III that Defendant terminated their agreement in violation of section 19 of the IFDA which requires a franchisor to show good cause before it can terminate a franchise agreement.

Defendant moves to dismiss this complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action upon which relief can be granted. Defendant contends that under the express terms of the contract, Plaintiff was an independent contractor and no franchise relationship existed. Defendant also asserts that the type of discrimination alleged does not give rise to a cause of action under the IFDA. Fi-nally, Defendant contends that since Plaintiff was not a franchisee, it was free to terminate the agreement pursuant to the terms of the contract which allow either party to terminate the agreement with or without cause. Consequently, Defendant urges this Court to dismiss the action.

## DISCUSSION

The Court will not dismiss an action for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless it is clear beyond doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Vadden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The Court will accept all well-pleaded allegations in the complaint as true. *Vaden*, 809 F.2d at 363; *Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986). Additionally, this Court will view the allegations in a light most favorable to the non-moving party, in this case Plaintiff, P & W Supply. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984); *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

## COUNT I

The first count of the complaint alleges that Plaintiff was a franchisee of Defendant under the Illinois Franchise Disclosure Act. The IFDA regulates the relationship between franchisees and franchisors in the State of Illinois. The statute's primary purpose is to deal with the "perceived losses" suffered by Illinois residents where franchisors fail to disclose full and complete information regarding the franchise relationship. Ill.Rev.Stat. ch. 121½, par. 1701. The Act requires that franchises be registered with the Attorney General prior to sale, prohibits fraudulent or deceptive practices in connection with the sale of franchises, bans certain types of discrimination among franchises and regulates a franchisor's ability to terminate a

franchise relationship. Despite the increasing number of franchises in the state, Illinois courts have only rarely discussed or interpreted the IFDA. *See, e.g., My Pie Intern. Inc. v. Debould, Inc.,* 687 F.2d 919, 922 (7th Cir.1982) ("Although [the IFDA] has been on the books for more than eight years, there has been virtually no judicial interpretation of it, and we must guess how the Illinois courts would resolve several novel questions under the act"); *Proimos v. Fair Automotive Repair, Inc.,* 808 F.2d 1273, 1276 (7th Cir.1987) ("[A]lmost no state cases discuss [the IFDA]. Another four years have passed without a significant new case in the courts of Illinois on the subject").

By its terms the IFDA applies only to "franchises." The statute defines a franchise as:

a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo-type, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more ...

Ill.Rev.Stat. ch. 121½, par. 1703(1).

In its motion to dismiss, Defendant has not contested the fact that it granted Plaintiff the right to engage in the selling of Du Pont Products nor that Du Pont prescribed or suggested to P & W Supply a marketing plan or system substantially associated with the Du Pont trade name and advertising. Defendant contends, however, that it never required Plaintiff to pay a franchise fee either directly or indirectly to sell the refinishing products. For a payment to be considered a franchise fee it must fit precisely within the statutory definition. *Kojancich v. Bridges,* 93 Ill.App.3d 550, 49 Ill.Dec. 4, 417 N.E.2d 694 (1981); *Vitkauskas v. State Farm Mut. Automobile Ins. Co.,* 157 Ill.App.3d 317, 109 Ill.Dec. 373, 379, 509 N.E.2d 1385, 1391 (1987). Section 3(14) of the IFDA defines "franchise fee" as

any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to any such payment for goods or services, provided that the [Attorney General] may by rule define what constitutes an indirect franchise fee, and provided further that the following shall not be considered the payment of a franchise fee: ... (c) the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price; (d) the payment for fixtures necessary to operate the business; ... or (f) the purchase or agreement to purchase goods for which there is an established market at a bona fide retail price subject to a bona fide commission or compensation plan.

Ill.Rev.Stat. ch. 121½, par. 1703(14). Although the complaint does not allege that Plaintiff was required to pay Defendant a direct franchise fee, Plaintiff asserts that it paid an indirect fee since Defendant required Plaintiff to maintain an inventory sufficient to satisfy any conceivable customer need. This inventory was in excess of $200,000 and resulted in annual sales of over $480,000. Despite this large volume of sales, Plaintiff alleges that the inventory he was required to keep was in excess of normal customer needs by over $500.

Defendant points out that section 3(14)(c) expressly excludes from the definition of "franchise fee," the purchase of "goods for which there is an established market at a bona fide wholesale [or retail] price." It contends that the inventory that Plaintiff was required to maintain was comprised of products for which there is a large, estab-

lished wholesale and retail market. As proof of its assertion, Defendant states that Du Pont refinish products are sold across the country to thousands of professional automobile body repair shops and automobile painters.

Defendant's argument is not dispositive. The Attorney General of Illinois has promulgated a rule that despite the fact that there is a bona fide wholesale or retail market for products, their purchase may constitute an indirect franchise fee if the "buyer is required to purchase a quantity of goods so unreasonably large that such goods may not be resold within a reasonable time." Ill.Admin.Code, Title 14, par. 200.108 (1989). Plaintiff's allegation that it was required to purchase products that he could not sell in the normal course of trade might reasonably fit within this exception.

Defendant, however, contends that this exception does not apply to the present case since under the terms of the contract Plaintiff could have returned the unsold products to Dupont for an exchange. However, even if Plaintiff exchanged the products he would have had the same number of products. Hence, Plaintiff might still have been required to stock products over the amount of normal customer needs.

■ Plaintiff also contends that it paid an indirect franchise fee in the form of paint mixers which Defendant required it to purchase solely to mix Du Pont products. Plaintiff claims that the cost of these fixtures was over the statutory requirement of $500 and that this number of paint mixers was not necessary to operate its business. Defendant asserts that the purchase of the machines was exempt from being a franchise fee since mixing machines are necessary fixtures of a paint store. Although it is true that a paint store needs at least one paint mixer to operate its business, it is debatable whether three such machines were necessary to meet the demands of P & W Supply's customers.

The complaint, nevertheless, fails to plead that Plaintiff was required to purchase the mixing machines from Defendant. The Attorney General of Illinois has promulgated a rule that "[a] payment made to a franchisor or affiliate for equipment ... shall not constitute a franchise fee if ... franchisee is permitted to purchase the items from sources other than the franchisor or its affiliates and the item is available from other sources." Ill.Admin.Code, Title 14, par. 200.105(c). Plaintiff urges the Court to infer from the complaint that Plaintiff was required to purchase Du Pont mixing machines. While mere vagueness or lack of detail are not sufficient grounds to dismiss a motion under Rule 12(b)(6), *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985), Plaintiff has failed to plead a critical element of its claim. This Court declines to read into the complaint allegations which are not there.

The Court holds that plaintiff's complaint is sufficient at least with regard to the payment of an indirect franchise fee relating to the keeping of inventory. In addition, the Court holds that Plaintiff's complaint is deficient with regard to the indirect franchise fee relating to the paint mixing machines. The Court, however, will grant Plaintiff thirty days to amend its complaint relating to the paint mixing machines if Plaintiff so chooses.

■ Finally, Defendant asserts that even if the purchase of the products and the fixtures constitute an indirect franchise fee pursuant to the IFDA, no franchise relationship existed since the contract expressly provides that Plaintiff was an independent contractor and was not authorized to present itself as an employee or agent of Du Pont. Such terms, however, are not atypical of franchise agreements and reflect the independent nature of the franchise relationship. *Neptune T.V. & Appliance Service Inc. v. Litton Microwave Cooking Products Srv., Litton Systems, Inc.*, 190 N.J.Super. 153, 462 A.2d 595 (1983); Thompson, Franchise Operations and Antitrust, 7–8 (1971).

## COUNT II

Count II of the complaint alleges that Defendant discriminated against Plaintiff in two ways: (1) terminating the "Jobber"

agreement due to Plaintiff's refusal to sign the revised agreement; and (2) refusing to sell a "specific Du Pont product" to Plaintiff prior to the termination of the agreement.

■ These allegations, however, fail to state a cause of action against Defendant pursuant to section 18 of the IFDA. The statute prohibits the franchisor from discriminating between Illinois franchisees in the "charges offered or made for franchise fees, goods, services, equipment, services, equipment, rentals or advertizing services, *if such discrimination will cause competitive harm to a franchisee who competes with a franchisee that received the benefit of the discrimination....*" Ill.Rev.Stat. ch. 121½, par. 1718 (1987) (emphasis added). For example, a fast-food franchisor cannot sell hamburger meat to one franchisee at 30 cents a pound while selling the same meat to a competing franchisee for 60 cents a pound. Similarly, the franchisor cannot require one of its franchisees to sell a hamburger for $2.00 and at the same time allow a competing franchisee to sell a hamburger for only $1.00. Consequently, while the IFDA prohibits price discrimination as an unfair practice, the Act does not prohibit the form of discrimination which is alleged in the complaint.

Plaintiff urges the Court not to read section 18 of the IFDA so narrowly as to prohibit only discrimination as to charges offered or made. Plaintiff contends that the statute enjoins franchisors from *all* other discriminatory practices except where those practices are:

"(c) related to local or regional experimentation with or variations in product or service lines or business formats or designs; ... (e) Bases on other reasonable distinctions considering the purposes of this Act and is not arbitrary."

Ill.Rev.Stat. ch. 121½, par. 1718. However, plaintiff only cites to a portion of § 1718, impliedly asking this Court to take the subsection dealing with price discrimination out of context. In fact, reading § 1718 as a whole, it is clear that this section of the statute refers only to *price discrimination on the part of franchisors against com-peting franchisees.* Because the Court must give the words in the statute their plain and ordinary meaning and cannot stretch to find provisions that are not there, *Jones v. Hanley Dawson Cadillac Co.,* 848 F.2d 803, 806–807 (7th Cir.1988), and because the Court declines plaintiff's invitation to read the statute out of context, the Court, therefore, dismisses Count II of Plaintiff's Complaint for failure to state a cause of action upon which relief may be granted.

## COUNT III

■ Plaintiff alleges in count III of the complaint that the Defendant violated section 19 of the IFDA by terminating the agreement without good cause. This section provides:

(a) It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the expiration of its term except for "good cause" ...

(b) "Good cause" shall include, but is not limited to, the failure of a franchisee to comply with any lawful provision of the franchise or other agreement and to cure such default after being given notice thereof and a reasonable opportunity to cure such default, which in no event need be more than 30 days.

Ill.Rev.Stat. ch. 121½, par. 1719.

In Illinois, every contract contains an implied covenant of good faith and fair dealing between the contracting parties. *Hugo v. Tomaszewski,* 155 Ill.App.3d 906, 108 Ill.Dec. 562, 508 N.E.2d 1139 (1987); *Carrico v. Delp,* 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972 (1986); *Osten v. Shah,* 104 Ill.App.3d 784, 60 Ill.Dec. 497, 433 N.E.2d 294 (1982). This implied covenant restricts franchisor discretion in terminating franchise agreements to cases where good cause exists. *Lippo v. Mobil Oil Corp.,* 776 F.2d 706 (1985); *Dayan v. McDonald's Corp.,* 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958 (1984) *cert. denied. Dayan* summarizes the applicable Illinois law as follows:

Clearly, the good faith restrictions on franchise termination imposed by judicial

authority in other jurisdictions and those imposed by our own legislature concur—a franchisor may not terminate a franchise agreement except where good cause exists. Good cause has been defined as a failure to substantially comply with obligations under the agreement. One commentator has also noted that the test used by most courts in defining good cause seems to center on a determination of commercial reasonability.

125 Ill.App.3d at 992–993, 81 Ill.Dec. at 171, 466 N.E.2d at 973. Defendant in its motion to dismiss has not argued that Plaintiff failed to comply with the terms of the 1984 agreement nor has it claimed that the terms of that contract were commercially unreasonable. Rather, Defendant asserts that it was justified in terminating the "Jobber" agreement since the express terms of the contract provide that either party may terminate the agreement with or without cause by giving thirty days notice. By allowing termination without good cause, the terms of the contract are in direct conflict with the termination provisions of the IFDA. Under Illinois law, where a conflict exists between a contract provision and a statutory provision, the statutory provision governs and any statutory provision that is applicable to a contract is considered a part of the agreement. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 362 (7th Cir.1987); *DC Elecs., Inc. v. Employer's Modern Life Co.*, 90 Ill.App.3d 342, 348, 45 Ill.Dec. 690, 695, 413 N.E.2d 23, 28 (1980). As stated above, the Court finds, for the purposes of this motion only, that Plaintiff's allegations are sufficiently well pleaded to establish that it was a franchisee of Defendant under the IFDA. Consequently, because the Court holds the IFDA to apply to Plaintiff's action, the provisions found at section 19 of the IFDA must override the express termination provisions of the contract.

■ Defendant also contends that a breach of the covenant of good faith and fair dealing does not create an independent cause of action. Generally, a breach of the implied covenant of good faith and fair dealing is not considered in itself a tortious act in Illinois. *Gorden v. Matthew Bender*

*& Co., Inc.*, 562 F.Supp. 1286 (N.D.Ill.1983); *Hugo v. Tomaszewski, supra* 108 Ill.Dec. at 565, 508 N.E.2d at 1142; *Powers v. Delnor Hospital*, 135 Ill.App.3d 317, 321–322, 90 Ill.Dec. 168, 172, 481 N.E.2d 968, 972 (1985); *Carlson v. Carlson*, 147 Ill. App.3d 610, 101 Ill.Dec. 384, 498 N.E.2d 708, *appeal denied* 113 Ill.2d 572, 106 Ill. Dec. 45, 505 N.E.2d 351 (1986). However, Illinois law recognizes an exception to this rule where the "bad faith" of the terminating party amounts to a clear breach of articulated public policy. *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 931 (D.C.Ill.1985); *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 572, 9 Ill.Dec. 304, 309, 366 N.E.2d 561, 566 (1977). Both the Illinois courts and legislature have articulated a strong public policy that franchise agreements should not be terminated by franchisors absent good cause and consequently have recognized a cause of action for terminating a franchise agreement in violation of the IFDA. *See, Lippo v. Mobil Oil Corp.*, 776 F.2d 706 (1985); *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958 (1984). Therefore, this Court cannot, for motion to dismiss purposes, hold that plaintiff will be unable to make such a "bad faith" showing as discussed, *inter alia*, in *Zick* and *Stevenson*.

## CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to dismiss Count I of the complaint and grants Plaintiff thirty days to file an amended complaint consistent with this opinion. Further, the Court grants Defendant's motion to dismiss Count II of the complaint without leave to amend for failure to state a cause of action upon which relief can be granted. Finally, the Court denies Defendant's motion to dismiss Count III of the Complaint.