**FLYNN BEVERAGE INC., an Illinois Corporation, Plaintiff,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., an Indiana Corporation; The House of Seagram, a Division of Joseph E. Seagram & Sons, Inc., an Indiana Corporation, Defendant.**

No. 92–4009.

United States District Court, C.D. Illinois.

Feb. 23, 1993.

Marc P. Seidler and Peter S. Lubin, Rudnick & Wolfe, Chicago, IL, for plaintiff.

Michael R. Feagley, Russell R. Eggert, Mark McLaughlin, Mayer Brown & Platt, Chicago, IL, David W. Ichel, David Stephen Smith, Simpson Thacher & Bartlett, New York City, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is a Report and Recommendation that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be Denied. Defendant has filed an objection to the Recommendation; therefore, pursuant to 28 U.S.C. § 636(b)(1), the Court will conduct a *de novo* review of those portions of the recommendation to which objections were made.

■ To sustain a dismissal of allegations under Fed.R.Civ.P. 12(b)(6), the Court must take all well-pleaded allegations as true and construe the Complaint in the light most favorable to the Plaintiff to determine whether Plaintiff is entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). "The issue is not whether Plaintiff will prevail but whether the [Plaintiff] is entitled to offer evidence to support the claim." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Plaintiff is an Illinois corporation with its principal place of business in Rock Island, Illinois. Plaintiff promotes, sells, and distributes spirits, beer, and wine to taverns, restaurants, and retail liquor outlets throughout western Illinois. Defendant is an Indiana corporation with its principal place of business in New York. Defendant imports and produces spirits and wines for distribution and sale throughout the United States. (Amended Complaint, p. 1). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship, and the amount in controversy is alleged to exceed $50,000.00. Venue is proper in this district and division because a substantial part of the events giving rise to the claim are alleged to have occurred in this district and division.

Since 1965, Plaintiff has distributed Defendant's products, earning substantial income and profits from its efforts on Defendant's behalf. The relationship between the parties has been governed by a series of oral and written agreements pursuant to which Plaintiff was granted distribution rights for Defendant's spirits. (*Id.* at 2).

On February 1, 1988, the parties entered into a written distribution agreement which provided, in part, as follows:

> This Agreement shall expire on January 31, 1989. If Company does not intend to renew this Agreement or enter into another agreement with Distributor upon the expiration hereof, or upon the expiration of any renewal agreement. Company shall give Distributor at least thirty (30) days advance written notice on such intention, and this Agreement shall expire at the end of said thirty (30) day notice period. If Company fails to give said notice, then this Agreement shall continue in full force and effect on a month-to-month basis until such time as said notice is given and for thirty (30) days thereafter, at which time this Agreement shall expire.

(Amended Complaint, Ex. A, p. 23).

On February 4, 1989, Defendant notified Plaintiff that the agreement would remain in full force and effect from month to month until a written notice of termination was given. Notice would be given at least 30 days prior to termination of the agreement. (Amended Complaint, Ex. B).

During the following years, Plaintiff operated its business according to Defendant's policies and requirements. In 1991, Plaintiff sold Defendant's spirits with a value of more than $1,100,000.00 wholesale to its customers. The sales constituted a significant portion of Plaintiff's sales and profits. (Amended Complaint p. 3).

On January 3, 1992, Defendant notified Plaintiff by letter that it was terminating Plaintiff's distribution rights 30 days from receipt of the letter. The letter stated that the action was taken "in furtherance of [Defendant's] overall consolidation of its distribution network." (Amended complaint, Ex.

C). Following termination, the distributorship was given to another distributor, and Plaintiff initiated this lawsuit.

Plaintiff's Amended Complaint is in four counts. Counts I and II allege causes of action under the Illinois Franchise Disclosure Act, Ill.Rev.Stat., ch. 121½, para. 1701 et seq. These counts allege unlawful termination of a franchise agreement. Counts III and IV are Illinois common-law counts alleging breach of implied covenant of good faith and intentional interference with business relationships resulting from the termination of the distribution agreement.

In its Motion to Dismiss, Defendant argued that Counts I and II fail because the written agreement has not been breached and that the Illinois Franchise Act does not apply to this case. Defendant further argued that Counts III and IV fail because its actions were valid under the agreement.

## ANALYSIS

█ In objecting to the recommendation, Defendant first argues that the agreement contains a New York choice of law provision which must be enforced. Defendant next argues that the amended Complaint must be dismissed because it fails to state a claim under New York law.

Paragraph 18 of the agreement states as follows:

This Agreement has been entered into in the offices of Company in the City of New York. This Agreement is a New York contract and shall in all respects be governed by and construed in accordance with the laws of the State of New York without regard to choice of law rules.

(Amended Complaint, Ex. A, p. 8).

█ Generally, "[a]n express choice of law provision contained in a contract will be given effect subject to certain limitations." *Potomac Leasing Co. v. Chuck's Pub, Inc.,* 156 Ill.App.3d 755, 109 Ill.Dec. 90, 92, 509 N.E.2d 751, 753 (1987). The primary limitations involve considerations of public policy and the relationship among the chosen forum, the parties, and the transaction. *Id.* at 753, 754, 109 Ill.Dec. 90, 509 N.E.2d 751.

In the case at bar, Defendant argues that the Court should apply the reasoning of *Nardini v. Thrifty–Rent–A–Car System, Inc.,* 1987 WL 12166 (N.D.Ill.). In *Nardini,* the court considered a License Agreement between Plaintiffs, the franchisees, and Defendant, the franchisor. That agreement contained an Oklahoma choice of law provision. The franchisee argued that the choice of law provision in the agreement was contrary to Illinois public policy found at Ill.Rev.Stat. ch. 121½, para. 1704. This paragraph states that: "[a]ny provision in a franchise agreement which designates jurisdiction or venue in a forum outside of this State is void with respect to any cause of action which otherwise is enforceable in this State...." *Id.* In considering this argument, the *Nardini* court found that the venue provision had nothing to do with choice of law provisions. Accordingly, the court reasoned that "[h]ad the Illinois legislature intended to bar agreements to apply the substantive law of other states to franchises located in Illinois it could easily have done so.... It did not, and so the court holds that the parties [sic] agreement to have Oklahoma law govern disputes about the License Agreement is enforceable." *Id.* at p. 3. Having found that the venue provision did not state a public policy against choice of law provisions, the court did not need to reach the reasonable relationships test. In making the determination that the choice of law provision did not contravene Illinois public policy, the court in *Nardini* did not discuss the application of the waiver provision of the Illinois Franchise Act, and for that reason, it has little precedential value. *See* Ill.Rev.Stat. ch. 121½, para. 1741.

The Seventh Circuit, in *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128 (7th Cir. 1990), thoroughly discussed both of the limitations to choice of law provisions when reviewing a choice of law provision in an agreement involving a New York franchisor and an Indiana franchisee. The agreement provided that New York law would govern any disputes, and the court, upon considering Indiana public policy, found that enforcement of the choice of law provision would be contrary to that policy. This policy, which the court gleaned from the Indiana franchise statute reads:

[A] franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protection, whether directly through waiver provisions or indirectly through choice of law.

*Id.,* at 132. Thus, the Seventh Circuit held that "[t]his public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement." *Id.*

The *Wright–Moore* court noted that "state public policy override[s] the contractual choice of law only if the state has a materially greater interest in the litigation than the contractually chosen state." *Id.* at 133. The court then considered the second limitation to determine which state, Indiana or New York, had a materially greater interest in the litigation. Upon analyzing the interest of Indiana versus New York, the court noted that the franchise was in Indiana, the witnesses and documents were in Indiana, the contract negotiations occurred in Indiana, and the contract was at least partially performed in Indiana. The court then noted that New York's only connection to the litigation was that the manufacturer was incorporated in New York. Accordingly, the court found that "[s]ince Indiana has a materially greater interest than New York and application of New York law would be contrary to a fundamental Indiana policy, Indiana franchise law governs this case." *Id.*

■ In the case at bar, this Court also finds that Illinois has a strong public policy in overriding the choice of law provision provided for in the agreement. The Court notes that the purpose of the Franchise Act is to protect Illinois residents who have suffered substantial losses to franchisors. *See* Ill.Rev. Stat. ch. 121½ para. 1702. This purpose can best be served by broadly construing the provisions of the Act. Thus, the Act's waiver provision, which provides that "[a]ny stipula-

tion or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act is void," *Id.* at para. 1741, would override a New York choice of law provision which would completely waive compliance with the Illinois Franchise Act.[1] Accordingly, the Court finds that the Illinois waiver provision, while not as specific as the Indiana waiver provision, may be read to invalidate choice of law provisions in franchise agreements.

The Court further notes that Illinois has greater interest in the litigation than does New York. As alleged in the Amended Complaint, Plaintiff is incorporated in Illinois, has its headquarters in Illinois, has all of its customers and territory in Illinois, and was allegedly damaged in Illinois. New York's sole connection to this lawsuit is that Defendant is headquartered there and the contract was entered into in New York. Clearly, Illinois has a materially greater interest than New York to the action, and application of New York law would be contrary Illinois policy regarding franchise law.

Defendant argues that the Court should follow *Potomac Leasing,* which considered a Michigan choice of law provision in a case involving the Illinois Consumer Fraud and Deceptive Business Practices Act, and *Mell v. Goodbody & Co.,* 10 Ill.App.3d 809, 295 N.E.2d 97 (1973), which involved a New York choice of law provision and an Illinois usury statute. In both of these cases the courts elected to allow the choice of law provisions to stand, but that was after determining that the choice of law provisions violated neither the public policy nor the reasonable relationship tests.

This Court, however, following the reasoning of *Wright–Moore,* finds that both the public policy test and the reasonable test override the New York choice of law provided for in the agreement.[2] Consequently, Defendant's argument on this matter does not

---

1. In *Wright,* the Seventh Circuit considered a similar provision in the Indiana franchise statute which made it unlawful to require ' "the franchisee to prospectively assent to a release ... [or] waiver ... which purports to relieve any person from liability to be imposed by this chapter" or to enter into an agreement "limiting litigation brought for breach of any agreement whatsoev-

er." ' *Wright–Moore,* 908 F.2d at 132 (quoting Ind.Code § 23–2–2.7–1(10)).

2. The Court notes that the Seventh Circuit in *Wright–Moore* found that "the Illinois franchise statute ... is almost identical to Indiana's statute...." *Wright–Moore,* 908 F.2d at 136.

present a ground on which to dismiss the Complaint.

■ Defendant next argues that Plaintiff's claims under the Illinois Franchise Act must be dismissed because Plaintiff did not pay any franchise fee for the right to distribute Defendant's products. The Court notes that the agreement, attached to the Amended Complaint, states that "no fee of any kind is being charged by Company for this distribution agreement...." (Amended complaint, Ex. A. p. 1).

"For a payment to be a franchise fee it must fit precisely within the statutory definition." *P. & W. Supply Co. v. E.I. DuPont de Nemours & Co.,* 747 F.Supp. 1262, 1265 (N.D.Ill.1990). (citations omitted). The Franchise Act defines "franchise fee" as:

Any fee or charge that a franchisee is required to pay directly or *indirectly* for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payments for goods or services, provided that the Administrator may by rule define what constitutes an indirect franchise fee, and provided further that the following shall not be considered the payment of a franchise fee: (a) the payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring such credit card; (b) amounts paid to a trading stamp company by a person issuing trading stamps in connection with the retail sale of merchandise or services; (c) the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price; (d) the payment for fixtures necessary to operate the business; (e) the payment of rent which reflects payment for the economic value of the property; or (f) the purchase or agreement to purchase goods for which there is an established market at a bona fide retail price subject to a bona fide commission or compensation plan.

Ill.Rev.Stat. ch. 121½, para. (14). (emphasis added).

Plaintiff does not dispute that it was not required to pay a "direct" franchise fee, but argues that it paid an *"indirect"* franchise fee, as defined by the Act, through required purchases of excess inventory. Indeed, the Amended Complaint alleges that Defendant required Plaintiff:

[T]o purchase quantities of spirits, in excess of $500.00 in cost, which were so unreasonably large that they could not be resold within a reasonable time. Such required purchases included (i) new brands of Seagram's spirits which had no established marked and for which there was little or not consumer demand in Rock Island and adjacent counties; (ii) expensive spirits, such as high-end cognacs (including Martell Extra with a cost to Flynn of as much as $121.33 per bottle), brandies, whiskeys, aperitifs and after-dinner liquors, for which there was little or no consumer demand in Rock Island and adjacent counties; (iv) purchases to meet required sales quotas set by Seagram for various brands at various times in excess of reasonable consumer demand in Rock Island and adjacent counties.

(Amended Complaint, p. 7).

The Court finds that Plaintiff's allegations that it was required to purchase excess inventory establishes, at least for the purposes of a Motion to Dismiss, that Plaintiff paid a franchise fee to Defendant. As noted by the Seventh Circuit, "investments in excess inventory may constitute and indirect franchise fee." *Wright–Moore,* 908 F.2d at 136. *See P & W Supply Co.,* 747 F.Supp. at 1266 ("The Attorney General of Illinois has promulgated a rule that despite the fact that there is a bona fide wholesale or retail market for products, their purchase may constitute an indirect franchise fee if 'buyer is required to purchase a quantity of goods so unreasonably large that such goods may not be resold within a reasonable time.'" (citation omitted)).

■ Defendant next argues that even if the Illinois Franchise Act applied, it does not prohibit expiration of the contract in accordance with its own terms. The agreement provides that:

This Agreement shall expire on January 31, 1989. If Company does not intend to renew this Agreement or enter into anoth-

er agreement with the Distributor upon the expiration hereof, or upon the expiration of any renewal agreement, Company shall give Distributor at least thirty (30) days advance written notice of said intention, and this Agreement shall expire at the end of said thirty (30) day notice period.

(Agreement, para. 10). Defendant argues that pursuant to the agreement, it gave Plaintiff 30 days notice of expiration on January 3, 1992. (Amended Complaint, para. 11).

The relevant paragraph of the Franchise Act provides that "[i]t shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the expiration of its term except for good cause...." Ill.Rev.Stat. ch. 121½, para. 1719.

The Magistrate Judge reasoned that because the written agreement may not control the case, the Defendant could not rely on the written contract to defeat the Plaintiff's claims. (Report and Recommendation, p. 3). At the Motion to Dismiss stage, such reasoning may logically defeat Defendant's argument on this issue.

■ This Court also notes that implied covenants of good faith act to limit the power of a franchisor "to terminate a franchise agreement without good cause where, by its express terms, the franchise was terminable upon 60 days written notice to the franchisee." *Dayan v. McDonald's Corp.*, 125 Ill. App.3d 972, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984) citing *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892 (1968) (The *Seegmiller* court stated that "when parties enter into a contract of this character, and there is not express provision that it may be cancelled without cause, it seems fair and reasonable to assume that both parties entered into the arrangement in good faith, intending that if the service is performed in a satisfactory manner it will not be cancelled arbitrarily." *Seegmiller*, 20 Utah 2d at 354, 437 P.2d 892). After a thorough discussion of the problem, the *Dayan* court went on to hold that "a franchisor may not terminate a franchise except where good cause exists." *Dayan*, 81 Ill.Dec. at 171, 466 N.E.2d at 973.

In the case at bar, Plaintiff specifically alleges that Defendant "violated the Act bay terminating [Plaintiff] without good cause...." (Amended Complaint, p. 10, para. 24). Accordingly, Defendant's argument that the agreement expired according to its own terms does not present a ground on which to dismiss the Amended Complaint.

■ Finally, Defendant argues that Plaintiff's remaining claims "are derivative of the principal wrongful termination claim and must be dismissed because the parties' contract permitted termination upon notice without cause." (Defendant's brief p. 14). Plaintiff argues in response that the agreement does not expressly state that the agreement can be terminated without cause.

The Court agrees that the agreement does not state that it can be terminated without cause. "By allowing termination without good cause, the terms of the contract are in direct conflict with the termination provisions of the [Franchise Act]." *P & W Supply*, 747 F.Supp. at 1268. Accordingly, the parties had an implied covenant of good faith and fair dealing. *Id.* Bad faith on the part of Defendant amounts to a breach of public policy and creates an independent cause of action. *Id.* Accordingly, the Court cannot, for Motion to Dismiss purposes, find that Plaintiff will be unable to make a bad faith showing. Therefore, Defendant's argument on this issue has not presented a ground on which to dismiss the Complaint.

For the above stated reasons, the Court ADOPTS the Magistrate Judge's Recommendation, and the Motion to Dismiss the Amended Complaint is DENIED. Defendant is ORDERED to answer the Amended Complaint within twenty-one (21) days of the date of this Order. This matter is referred to the Magistrate Judge for further proceedings.